150 F.3d 189
 47 U.S.P.Q.2d 1529
 ATLANTIC RICHFIELD COMPANY, Plaintiff-Counter-Defendant-Appellant,
v.
ARCO GLOBUS INTERNATIONAL COMPANY, INC., a New York
Corporation, and ARCO Globus International
Company, Inc., a New Jersey Corporation,
Defendants-Counter-Claimants-Appellees.
 Docket No. 97-7829.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 27, 1998.
Decided July 17, 1998.
 
 Lawrence E. Abelman, Abelman, Frayne & Schwab, New York City (Jeffrey A. Schwab, Michael Aschen, of counsel), for Plaintiff-Counter-Defendant-Appellant.
 Oliver P. Howes, Jr., Nims, Howes, Collison, Hansen & Lackert, New York City (Paul W. Garrity, of counsel), for Defendants-Counter-Claimants-Appellees.
 Before: WINTER, Chief Judge, PARKER, Circuit Judge, and SCHWARZER, District Judge.*
 WINTER, Chief Judge:
 
 
 1
 This case concerns the extent to which the Lanham Act, 15 U.S.C. § 1051 et seq., applies to allegedly infringing conduct that occurs outside the United States. The Atlantic Richfield Company ("Arco") appeals from Judge Keenan's dismissal, after a three-day bench trial, of Arco's claims against two related companies using the name Arco Globus International Company (collectively "AGI"). Arco's claims concern AGI's use of "Arco Globus International" to identify AGI's oil and gas operations, particularly in the former Soviet Union. Arco alleges that AGI's use of the word "Arco" infringes Arco's registered "ARCO" mark under 15 U.S.C. § 1114(1), violates the Lanham Act's prohibition against false designation of origin, 15 U.S.C. § 1125(a), and amounts to unfair competition and dilution. Judge Keenan held that the Lanham Act does not reach AGI's present use of the "ARCO" mark in the former Soviet Union. See Atlantic Richfield Co. v. Arco Globus Int'l Co., No. 95 Civ. 6361, 1997 WL 607488 (S.D.N.Y. May 29, 1997). We agree and affirm.
 
 BACKGROUND
 
 2
 Arco is a well-known company in the domestic and foreign oil and gas industry. In the United States, Arco sells gasoline to retail customers in five western states, operates various oil refineries and two chemical companies, and distributes aviation and diesel fuels, petrochemicals, and plastics. In addition, Arco produces, markets, and trades bulk crude oil and is a member of the New York Mercantile Exchange where it trades oil futures. Arco, through a subsidiary, Arco International Oil and Gas Company, also has extensive operations throughout the world.[1]
 
 
 3
 The trademark "ARCO" was first used in 1909 by the Atlantic Refining Company in connection with the sale of lubricants. After Atlantic Refining merged with the Richfield Oil Company in 1966, the merged companies began operating extensively under the name "ARCO." Beginning in 1987, the "ARCO" mark was used in all its petroleum and petrochemical businesses. Currently, more than 50 of Arco's 250 United States registrations are for ARCO and ARCO-prefix trademarks, for use on products such as lubricating oils, diesel fuel, petroleum products, motor oils, and greases.
 
 
 4
 AGI is a "small beginning company," 1997 WL 607488, at * 6, that was formed in 1990.[2] AGI's principal activity is identifying products to be traded by its de facto parent, Arco Globus Company Ltd., a Channel Islands corporation engaged in the financing, processing, and sale of crude oil, the trading of oil and gas derivatives, and the provision of refinery engineering services. AGI's involvement in the Soviet Union began in 1990 when it opened a Moscow office. It began trading oil in Russia in 1991.
 
 
 5
 AGI also engages in activity in the United States. It is a New York company with a New York office and has two American employees. However, Judge Keenan found that it has never offered products for sale in the United States. AGI has no plans to expand its petroleum operations here, but is looking into domestic timber processing. See id. at * 4. Arco does not dispute these findings,[3] but asserts that AGI's domestic business activities are much more extensive than that which is reflected in Judge Keenan's opinion. For example, according to Arco, AGI escorted the management of Soviet oil-refinery managers on tours of United States refineries, attempted unsuccessfully to establish a Texas-based petroleum joint venture, and deposited money from foreign sales in a New York bank.
 
 
 6
 After a three-day bench trial, Judge Keenan concluded that the Lanham Act did not reach AGI's allegedly infringing activities abroad because they did not have a substantial effect on United States commerce. Judge Keenan concluded further that, even if the Lanham Act were to apply, Arco did not prove a violation of it. Judge Keenan also dismissed Arco's unfair competition and dilution claims. This appeal followed.
 
 DISCUSSION
 
 7
 The Lanham Act may reach allegedly infringing conduct that occurs outside the United States when necessary to prevent harm to commerce in the United States. See, e.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1006 (2d Cir.1997). The Supreme Court first addressed the extraterritorial reach of the Lanham Act in Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952). In Bulova, Steele, a United States citizen, manufactured and sold spurious Bulova watches in Mexico. The plaintiff, a large watch manufacturer that had registered the BULOVA mark in the United States but not in Mexico, sought to enjoin the defendant's activity in Mexico. In concluding that the defendant's extraterritorial activity came within the scope of the Lanham Act, the Court emphasized that the defendant's "operations and their effects were not confined within the territorial limits of a foreign nation." Id. at 286, 73 S.Ct. 252. For example, although the defendant manufactured the watches, affixed the BULOVA mark, and sold them only in Mexico, the defendant bought component parts of his watches in the United States. This activity, while legal when viewed in isolation, was deemed an "essential step[ ]" in the course of "an unlawful scheme." Id. at 287, 73 S.Ct. 252. Moreover, some spurious Bulova watches had filtered into the United States, and the plaintiff had received complaints from retail jewelers in Texas whose customers had brought in fake Bulovas for repair. See id. at 286, 73 S.Ct. 252. Because of the resultant confusion and harm to the plaintiff's goodwill in the United States, the Court concluded that the Lanham Act reached the defendant's Mexican activities. See id. at 286-87, 73 S.Ct. 252.
 
 
 8
 From Bulova, we have concluded that three factors--the so-called "Vanity Fair factors"--are relevant to whether the Lanham Act is to be applied extraterritorially: (i) whether the defendant is a United States citizen; (ii) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (iii) whether the defendant's conduct has a substantial effect on United States commerce. See Totalplan Corp. of Am. v. Colborne, 14 F.3d 824, 830 (2d Cir.1994) (citing Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir.1956)). Judge Keenan found, and the parties agree, that two of these three factors are present here: AGI is a United States citizen and there exists no conflict with foreign law. The question on appeal, therefore, is whether AGI's activity has a substantial effect on United States commerce.[4]
 
 
 9
 Significantly, Arco conceded in oral argument, as it had to, that AGI's allegedly infringing activities--all of which took place in foreign nations--do not themselves have a substantial effect on United States commerce. Certainly, there is no evidence that domestic consumers have been misled or have come to view the ARCO mark less favorably as a result of those foreign activities. Arco claims, rather, that AGI's activities in the United States bring AGI's foreign activities within the scope of the Lanham Act, at least insofar as those domestic activities "were designed to further and support [AGI's] foreign conduct." Appellant's Brief at 35. In support of this proposition, Arco relies primarily on language in Bulova in which the Court described the defendant's purchases of components in the United States as an "essential step[ ]" in the course of "an unlawful scheme." 344 U.S. at 287, 73 S.Ct. 252.
 
 
 10
 However, Bulova is distinguishable in two ways. First, Bulova does not hold that a defendant's domestic activity, even if "essential" to infringing activity abroad, is alone sufficient to cause a substantial effect on United States commerce. In Bulova, the infringing product, although manufactured and sold abroad, was coming into the United States for sale, resulting in consumer confusion and harm to the plaintiff's goodwill in the United States. See Totalplan, 14 F.3d at 830 (interpreting Bulova ); see also Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 990 n. 35 (2d Cir.1975) (dicta) (Lanham Act applicable in Bulova because of "effect on Bulova's business within the United States"). Here, AGI's allegedly infringing activities did not confuse Arco's customers in the United States or lessen the value of its mark in this country.
 
 
 11
 Second, even if Bulova is read to indicate that a defendant's infringing extraterritorial conduct has a substantial effect on United States commerce whenever some non-infringing domestic activity is "essential" to that extraterritorial conduct, none of AGI's domestic activities can be deemed essential to its foreign conduct. AGI has only two employees in the United States, no American customers, and no plans to expand its petroleum operations into the United States. To be sure, there is evidence of other domestic activities in which AGI has engaged: escorting oil-refinery managers on tours of United States refineries, attempting to participate in a joint venture, and depositing money from foreign sales in a New York bank. However, these activities are in no sense essential to AGI's allegedly infringing activities abroad. Unlike Bulova, where parts of the infringing product were manufactured in the United States, or other cases where the product traveled in United States commerce, see Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir.1995) (Lanham Act applies to foreign sales of counterfeit jeans where some pairs of jeans were found at defendants' premises in United States and were shipped through United States); Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1179 (11th Cir.1994) (Lanham Act applies to sales of cordless telephones abroad because telephones were shipped through United States free-trade zone); American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n, 701 F.2d 408, 414-15 (5th Cir.1983) (domestic processing, packaging, transporting, and distributing rice products deemed "essential steps" under Bulova where ultimate sale occurred abroad), Arco has shown only that AGI had some contact with United States commerce. It has not shown that, without such contact, AGI's foreign activities would be impeded or rendered more costly. The tours of refineries, failed attempt at a joint venture, and use of American banks for deposits are either irrelevant to, or of de minimis support for, the allegedly infringing activities.
 
 
 12
 At best, Arco has shown that AGI has a geographic presence in the United States and, by inference from that fact, that some decision-making regarding AGI's foreign activities has taken place on American soil. We do not think that such a presence suffices to trigger an extraterritorial application of the Lanham Act. The ultimate purpose of the Lanham Act pertinent to this appeal is to encourage domestic sellers to develop trademarks to assist domestic buyers in their purchasing decisions. See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942). Where (i) an alleged infringer's foreign use of a mark does not mislead American consumers in their purchases or cause them to look less favorably upon the mark; (ii) the alleged infringer does not physically use the stream of American commerce to compete with the trademark owner by, for example, manufacturing, processing, or transporting the competing product in United States commerce; and (iii) none of the alleged infringer's American activities materially support the foreign use of the mark, the mere presence of the alleged infringer in the United States will not support extraterritorial application of the Lanham Act. The presence of a foreign infringer, without more, simply does not call into play any purpose of that Act. That being the case, Arco has failed to meet Vanity Fair 's substantial-effect requirement.[5]
 
 
 13
 We therefore affirm.
 
 
 
 *
 The Honorable William W Schwarzer of the United States District Court for the Northern District of California, sitting by designation
 
 
 [1]
 The parties dispute the nature and extent of Arco's presence in the former Soviet Union. Because we hold that the Lanham Act does not reach AGI's activities, we need not address that dispute
 
 
 [2]
 The other appellee, also named Arco Globus International Company, is a New Jersey corporation that was formed in 1994 but has never conducted any business. Accordingly, all activities attributed to "AGI" in this opinion refer to those of the New York corporation
 
 
 [3]
 As to Judge Keenan's finding that AGI has no present intention to expand its petroleum operations into the United States, Arco contends that this finding, while not clearly erroneous, is incomplete because Abraham Citron, AGI's president, did not preclude the possibility that it would trade petroleum products in the United States in the future. We offer no opinion as to whether, if AGI were to attempt some day to enter the domestic petroleum industry, use of its present name would violate Arco's trademark rights
 
 
 [4]
 Arco reads Vanity Fair to suggest that, where the first two factors are present, extraterritorial application of the Lanham Act may be appropriate even in the absence of a substantial effect on United States commerce. Vanity Fair stated only that "the absence of one of the [first two] factors might well be determinative and that the absence of both is certainly fatal." 234 F.2d at 643; see also Totalplan, 14 F.3d at 831 (absence of any two factors is fatal). But cf. Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 746 (2d Cir.1994) (remanding case, despite absence of first two Vanity Fair factors, for consideration of effect on United States commerce because plaintiff sought to enjoin foreign uses of mark only insofar as they were likely to reach American consumers rather than seeking to enjoin all foreign uses of mark). This language from Vanity Fair indicates, at most, that the presence of one and perhaps both of the first two factors is generally necessary; it says nothing about whether the presence of the first two factors is sufficient. Indeed, we have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce
 
 
 [5]
 Because we conclude that the Lanham Act does not reach AGI's allegedly infringing activities, we need not address Judge Keenan's alternative holding that Arco did not prove a violation of the Act. Also, because the same activities underlying the federal claims underlie the dilution and unfair-competition claims, which arise under New York law, and because Arco understandably does not contend that the scope of New York law is broader than that of the Lanham Act, we need not address Judge Keenan's dismissal of Arco's state-law claims