**WORLD BOOK, INC., Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORP. Defendant.**

**No. 03 Civ. 8692(RO).**

United States District Court, S.D. New York.

Feb. 3, 2005.

**452**

Edward Fued Maluf, Miriam Dowd, Bingham, McCutchen, LLP, New York City, for Plaintiff.

John A. Redmon, Bart G. Van de Weghe, Hogan and Hartson, LLP, New York City, for Defendant.

## OPINION & ORDER

OWEN, District Judge.

Plaintiff World Book, Inc. is the publisher of the World Book Encyclopedia. Defendant IBM is the well-known technology company. World Book commenced the instant action following the alleged unauthorized distribution of electronic versions of its encyclopedia by IBM in the United Kingdom. World Book claims such distribution resulted in infringement of its trademarks, breach of contract, and common law misappropriation.

In May of 1996, World Book and IBM entered into a Base Agreement ("BA") which established basic terms and conditions of the parties' relationship and provided for the creation of future transaction documents. In 1999, the parties executed a Joint Development Agreement ("JDA") wherein World Book gave IBM a license to distribute products including CD versions of its encyclopedia ("Multimedia Products"). World Book reserved for itself certain distribution rights and, in turn, granted IBM certain exclusive distribution rights. This grant included, among other things, the right to distribute and sublicense copies of the Multimedia Products through limited distribution channels. IBM's license permitted it to "use, execute, reproduce, display, perform, transfer, distribute and sublicense" the Multimedia Products provided such was in accordance with the terms of the BA, the JDA, and other transaction documents between the parties. Under all of the above agreements, World Book's trademarks remained under the ownership of World Book.

In 1999, IBM authorized its subsidiary, Lotus Development (UK) Ltd to enter into a distribution agreement in the United Kingdom with Time Group (the "Time Agreement"), the product at all times continuing to bear World Book's authentic, genuine trademark. World Book alleges that the Time Agreement failed to require Time Group to observe alleged distribution restrictions that were imposed on IBM in the JDA. The Time Agreement allegedly allowed Time Group to use distributions channels in the United Kingdom that were reserved for World Book.[1]

After unsuccessful attempts to persuade IBM to stop this distribution, World Book filed the instant action alleging: (1) trademark infringement under § 32 of the Lanham Act, 15 U.S.C.A. § 1114, (2) breach of contract, (3) common law misappropriation, and (4) an "accounting." World Book seeks compensatory damages and disgorgement. By agreement of the parties, New York law governs the JDA. (BA §§ 12.5, 12.7).

In deciding a motion for judgment on the pleadings under F.R.C.P. 12(c), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *See D'Alession v. New York Stock Exchange*, 258 F.3d 93, 99 (2d Cir.2001). A court should not dismiss a complaint under Rule 12(c) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* However, while the pleading standard is a liberal one, "bald assertions and conclusions of law will not suffice to state a claim." *Tarshis v. Riese*

*Org.*, 211 F.3d 30, 35 (2d Cir.2000). In deciding the motion, the Court may also consider written instruments attached as exhibits as well as documents that are incorporated by reference or heavily relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002).

Since the alleged unauthorized distribution of the Multimedia Products occurred only in the United Kingdom, World Book's Lanham Act claim must, but does not, plead the required elements for extraterritorial imposition of that Act. Accordingly, before the Court now is to what extent *Atlantic Richfield Co. v. Arco Globus International Co.*, 150 F.3d 189 (2d Cir.1998) is applicable. It provides:

> Where (i) an alleged infringer's foreign use of a mark does not mislead American consumers in their purchases or cause them to look less favorably upon the mark;
>
> (ii) the alleged infringer does not physically use the stream of American commerce to compete with the trademark owner by, for example, manufacturing, processing, or transporting the competing product in United States commerce; and
>
> (iii) none of the alleged infringer's American activities materially support the foreign use of the mark, the mere presence of the alleged infringer in the United States will not support extraterritorial application of the Lanham Act. The presence of a foreign infringer, without more, simply does not call into play any purpose of that Act.

*Id.* at 193–94.

World Book attempts to distinguish *Atlantic Richfield* by arguing that subse-

---

1. World Book alleges that the Time Agreement improperly authorized the Time Group to: (a) provide the Multimedia Products directly to schools; (b) conduct direct or indirect door-to-door or other sales of the Multimedia Products; (c) engage in improper promotional activity, such as a premium giveaway in a newspaper contest; and (d) alter the physical appearance of the Multimedia Products by placing trademarks additional to World Book's on the product.

quent decisions have qualified its reach. Plaintiff cites *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157 (S.D.N.Y.1998), as interpreting *Atlantic Richfield* to hold that where a defendant's domestic conduct materially supports its foreign infringing activity, a substantial effect can be found. This principle, however, is not nearly so general. As the Court pointed out:

> Piccoli alleges that the defendants engaged in an organized scheme pursuant to which Jeanswear sent promotional materials to prospective purchasers which invited them to come to its U.S. showrooms to view, negotiate for and purchase Calvin Klein jeans for unrestricted international distribution. This domestic activity thus allegedly went somewhat beyond that at issue in *Totalplan* [*Totalplan Corp. of America v. Colborne*, 14 F.3d 824 (2d Cir.1994) (packaging in and shipment of goods from the United States) ] and surely was a use of the physical stream of American commerce that was essential to the alleged infringement.

*Piccoli*, 19 F.Supp.2d at 171. Here, however, the *only* domestic activity plaintiff alleges to have occurred in connection with the unauthorized distribution is the mere *authorization* of that activity. The defendants in *Piccoli* who actively pursued foreign sales through the domestic shipment of promotional materials went far beyond merely authorizing foreign distribution. If this Circuit in *Totalplan* found the packaging and shipment of the infringing goods from the United States insufficient to meet the substantial effects test, then *a fortiori* the mere domestic authorization of foreign activity is insufficient.

World Book argues alternatively that its Lanham Act claim should not be dismissed since the allegedly infringing goods were not "genuine" under a definition it created, which is that while they are in fact their goods, they were no longer subject to their quality controls. To support this, World Book cites *El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir.1986): "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark ... [T]he actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." *Id.* at 395.

■ I see three problems with World Book's "quality control" argument. First, World Book did not plead this theory in its complaint—it was first raised in its brief—and so it need not be considered. *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (a party may not amend its complaint through statements made in motion papers). Next, even if World Book had asserted this "loss of quality control theory" of liability in its complaint, the pleading would still fail to state a claim. At the outset, there is no claim or assertion by World Book that these goods—*their goods*—are not "up to snuff." A Lanham Act claim based on a "loss of quality control" theory requires a showing by the mark holder that "(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by those procedures, and (iii) the [sales are non-conforming [2]] and that such non-conforming sales will diminish the value of the mark." *Warner–Lambert Company v. Northside Development Corporation*, 86 F.3d 3, 6 (2d Cir.1996). But these three *Warner–Lambert* factors are also absent. Finally, World Book also fails

---

**2.** [Bracketed material and footnote by the Court]: This has to be alleged and cannot be, *see supra.*

to explain how an alleged loss of quality control automatically satisfies the substantial domestic effects requirement of *Atlantic Richfield.* Accordingly, the first cause of action is dismissed.

■ IBM next moves to dismiss World Book's breach of contract and misappropriation claims on grounds that they are time-barred under a two-year limitations period set forth in the BA. Section 12.5 provides:

> Neither party will bring a legal action against the other more than two years after the cause of action arose. This does not apply to actions brought to enforce INDEMNIFICATION AND LIABILITY or intellectual property rights.

BA § 12.5 (emphasis in original).

World Book contends that its contract and misappropriation claims are exempt from the two-year limitations because both "are *related to* World Book's intellectual property rights and *brought with* World Book's Lanham Act claim to enforce these rights." Mem. Opp'n at 22 (emphasis supplied). But those violations allegedly flowed from an improper authorization to distribute the Multimedia Products—a contract violation—not an invasion of intellectual property rights. Accordingly, the two-year contractual limitation period controls and both the contract and misappropriation claims are time-barred.

■ World Book's misappropriation claim also fails for the same reason as its Lanham Act claim, viz., failure to plead substantial effects on domestic commerce. "[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, *likely to cause confu-*

sion or to deceive purchasers as to the origin of the goods.' " *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir.1995) (emphasis supplied) (quoting *Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. 236, 249–50 (S.D.N.Y. 1990)).[3]

As for World Book's final "cause of action," the accounting requested is a remedy, available on a showing of Lanham violations undertaken in bad faith; it is not an independent cause of action. It is dismissed.

Given the foregoing, IBM's motion for judgment on the pleadings is granted and the action is dismissed in its entirety.

So ordered.

---

**3.** For this reason, World Book's efforts in its opposition brief to show that it has adequately alleged bad faith fail, and in any event, are to no avail. Since misappropriation requires

*both* bad faith and consumer confusion, a pleading of the first cannot substitute for a pleading of the second.