■ ALLAN H. HELLER, Appellant, v DONALD A. KURZ et al., Respondents. [643 NYS2d 580]

Plaintiff seeks a broker's fee in connection with the underwriting of the sale of some $10.5 million in the stock of Equity Marketing, Inc. (EMI), the defendant in a related action. No written brokerage agreement was executed, and plaintiff's claim in the instant action is asserted against defendants on a theory of quasi contract. Supreme Court concluded that plaintiff must look to the corporation for recovery on his claim and dismissed the complaint herein. On appeal, plaintiff alleges that the individual defendants "piggybacked the sale of $1.575 million of their own stock in EMI on the [initial public offering]" and argues that he "is entitled to a reasonable fee under his *quantum meruit* cause of action."

It has been pointed out that the term "quantum meruit" is ambiguous in customary use: "it may mean (1) that there is a contract 'implied in fact' to pay the reasonable value of the services, or (2) that, to prevent unjust enrichment, the claimant may recover on a quasi-contract (an 'as if' contract) for that reasonable value" (*Martin v Campanaro,* 156 F2d 127, 130, n 5, *cert denied* 329 US 759, quoted in Garner, Dictionary

of Modern Legal Usage 724 [2d ed]). As this Court expressed the doctrine in *Bauman Assocs. v H & M Intl. Transp.* (171 AD2d 479, 484):

"A cause of action under a quasi contract theory 'only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment' (*Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 388). Nonetheless, recovery is available not only where there has been an actual benefit to the other party but, in the instance of a wrongdoing defendant, to restore the plaintiff's former status, including compensation for expenditures made in reliance upon defendant's representations (*Farash v Sykes Datatronics*, 59 NY2d 500). However, as the Court of Appeals has observed in *Farash v Sykes Datatronics* (*supra*, at 506): 'The plaintiff recovers the reasonable value of his performance whether or not the defendant in any economic sense benefited from the performance. The quasi-contractual concept of benefit continues to be recognized by the rule that the defendant must have received the plaintiff's performance; acts merely preparatory to performance will not justify an action for restitution.'

"Further, '[i]n order to make out a claim in quantum meruit, a claimant must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services' (*Moors v Hall*, 143 AD2d 336, 337-338; *see also, Umscheid v Simnacher*, 106 AD2d 380)."

While the individual defendants have been enriched by the sale of shares they owned in the corporation, the facts pleaded in the complaint are insufficient to support the conclusion that their enrichment was unjust. As this Court emphasized in *Kagan v K-Tel Entertainment* (172 AD2d 375, 376), "a plaintiff must demonstrate that services were performed *for the defendant* resulting in its unjust enrichment (*Kapral's Tire Serv. v Aztek Tread Corp.*, 124 AD2d 1011, 1013). It is not enough that the defendant received a benefit from the activities of the plaintiff (*Armstrong v I.T.T.S. Corp.*, 10 AD2d 711); if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery (*Citrin v Columbia Broadcasting*, 29 AD2d 740)" (*accord, Metropolitan Elec. Mfg. Co. v Herbert Constr. Co.*, 183 AD2d 758).

As the complaint in this case alleges, it was understood that plaintiff "would be acting as a finder in this matter for Equity Marketing" and "would be taken care of by Equity Market-

ing." While the subscription agreement between EMI and the underwriter is not contained in the record on appeal, the sale of stock is an inherently corporate function, and it is only logical that any expenses incurred in connection with the underwriting would be borne by the corporation. Plaintiff has made no showing that he performed any additional services for the individual defendants for which he reasonably expected compensation from them (*Moors v Hall, supra*, at 338). Nor has it been established that the sale of defendants' shares was more than incidental to the $10.5 million underwriting of EMI's public offering.

Plaintiff's claim against the corporation is apparently predicated on either a parol brokerage agreement, the terms of which have yet to be established, or a contract implied in fact to pay "a reasonable fee", as stated in the complaint. Therefore, it is not clear that the agreement with EMI, allegedly basing plaintiff's remuneration on a percentage "of the cash raised by the contemplated stock offering", necessarily excludes the sum raised by the sale of the individual defendants' shares from consideration in determining the amount of plaintiff's fee. Ultimately, whether the parties to that agreement contemplated payment of a commission by EMI based on the total "of the cash raised" or on some other amount, whether or not to be determined by reference to the subscription agreement, is a question of fact to be established at trial (*supra*). Concur—Sullivan, J. P., Milonas, Rubin, Tom and Mazzarelli, JJ.