PICCOLI A/S, Plaintiff,

v.

CALVIN KLEIN JEANSWEAR CO., World Apparel Products Co., Azteca Production International, Inc., Interexport Marketing Ltd., Triglobal International Market Services, Inc., and Cobra Corp. U.S.A., Defendants.

No. 98 Civ. 0040(LAK).

United States District Court, S.D. New York.

Sept. 8, 1998.

Earl H. Nemser, Gary J. Mennitt, Shereff, Friedman, Hoffman & Goodman, L.L.P., New York City, Garret G. Rasmussen, Joe R. Reeder, Michael J. Nardotti, Jr., Stephen J. Kott, Patton Boggs, L.L.P., Washington, DC, for plaintiff.

Russell E. Brooks, Richard E. Rosberger, Milbank, Tweed, Hadley & McCloy, New York City, for defendant Calvin Klein Jeanswear Co.

Daniel S. Greenfeld, Parker Chapin Flattau & Klimpl, L.L.P., New York City, for defendant Azteca Production International, Inc.

Daniel A. DeVito, Cathy E. Shore–Sirotin, Laura A. Quintano, Weil, Gotshal & Manges L.L.P., New York City, for defendant World Apparel Products Co., Inc.

Martin Hong, for defendant TriGlobal International Market Services, Inc.

Barry J. Levine, Mineola, NY, for defendant Cobra Corp. U.S.A.

## MEMORANDUM OPINION

KAPLAN, J.

Piccoli A/S ("Piccoli"), a former exclusive distributor of Calvin Klein jeans in Scandinavia, alleges that its American counterpart, defendant Calvin Klein Jeanswear Co. ("Jeanswear"), conspired with Jeanswear's co-defendants to export Jeanswear's surplus jeans to Scandinavia and thus to destroy plaintiff's market. Piccoli asserts that Jeanswear's actions constituted breaches of contract and of the duty of good faith and fair dealing and that each defendant is liable for unjust enrichment, unfair competition, tortious interference with contractual relations, and violations of the Lanham Act and the Paris Convention. Jurisdiction is premised on the federal claims as well as alienage.

Jeanswear and defendant Azteca Production International, Inc. ("Azteca") move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendant World Apparel Products Co. ("World Apparel") moves for judgment on the pleadings on substantially the same grounds. For the reasons stated below, the motions are granted in part and denied in part.

### Background

The following facts are culled exclusively from the complaint, the truth of which is assumed for purposes of this motion.

In 1991, Calvin Klein Inc. ("CKI"), the beneficial owner of the Calvin Klein trade-

marks,[1] granted Piccoli an exclusive license to distribute Calvin Klein jeans in Scandinavia (the "CKI/Piccoli Agreement").[2] The CKI/Piccoli Agreement required Piccoli to purchase set amounts of jeans and to market, promote, and distribute them solely to upscale retailers.[3] Between 1991 and 1994, Piccoli successfully built relationships with upscale retailers and significantly increased sales "by making a substantial marketing effort, hiring additional skilled marketing personnel, spending thousands of hours and investing hundreds of thousands of dollars building and maintaining a distribution network."[4]

In 1994, CKI granted Jeanswear an exclusive license to manufacture, distribute, and wholesale Calvin Klein jeans in North America (the "CKI/Jeanswear Agreement").[5] The CKI/Jeanswear Agreement prohibited Jeanswear from selling Calvin Klein products outside North America and also from selling to third parties whom it knew or should have known would sell the products outside North America.[6]

In May 1995, CKI granted CK Jeanswear Europe, S.P.A. ("European") an exclusive license to manufacture, distribute, and wholesale Calvin Klein jeans in Europe (the "CKI/European Agreement").[7] A few months later, in August 1995, the CKI/Piccoli Agreement expired.[8] Piccoli then entered into an agreement with European which granted Piccoli another exclusive distributorship in Scandinavia (the "European/Piccoli

Agreement").[9] The European/Piccoli Agreement imposed upon Piccoli essentially the same obligations as had the CKI/Piccoli Agreement.[10] In furtherance of those obligations, Piccoli expended "substantial time, money, and effort in promoting and trying to maintain the prestigious market for Calvin Klein jeans in Scandinavia." [11]

Trouble arose in the summer of 1995 when the defendants began to export Jeanswear's excess inventory of Calvin Klein jeans to Denmark.[12] The exported jeans were sold "through different distribution channels, to lower-end stores, and [were] advertised using different marketing methods." [13] Not surprisingly, the majority of them ended up on the shelves of Scandinavian discount stores.[14] In February 1996, Piccoli complained about these imports to European, noting "that its complaints to New York 'have not been dealt with in a satisfactory' manner." [15]

In March 1996, Piccoli began to receive letters from its upscale customers complaining of the imported jeans and canceling orders.[16] This led to a second Piccoli complaint to European.[17] At some point prior to June 10, 1996, CKI gave Jeanswear some form of notice concerning Piccoli's complaints.[18]

In October 1997, Piccoli discussed with European the possibility of litigation against Jeanswear.[19] European, however, refused to participate in a suit against a fellow Calvin Klein distributor.[20] On December 18, 1997, Piccoli terminated the European/Piccoli

---

1. Cpt. ¶ 15.

2. *Id.*

3. *Id.*

4. *Id.* ¶¶ 16–18.

5. *Id.* ¶ 19.

6. *Id.* ¶ 20.

7. *Id.* ¶ 22.

8. *Id.* ¶ 23.

9. *Id.* It appears that upon the expiration of the CKI/Piccoli Agreement, European in some manner obtained the Scandinavian distribution rights which it then sublicensed back to Piccoli.

10. *Id.*

11. *Id.* ¶ 24.

12. *Id.* ¶ 25.

13. *Id.*

14. *Id.* ¶ 27.

15. *Id.* ¶ 30.

16. *Id.* ¶ 31.

17. *Id.* ¶ 32.

18. *Id.* ¶ 36.

19. *Id.* ¶ 47.

20. *Id.*

Agreement after learning that European also was exporting Calvin Klein jeans into Scandinavia.[21]

Piccoli contends that Jeanswear's products continue to appear in Scandinavian discount stores [22] and, as a result, that "virtually all of the retailers who in the past had regularly purchased Calvin Klein products from Piccoli [have] now either canceled orders or dropped the line altogether." [23]

## Discussion
### Contract Claims Against Jeanswear

#### A. Breach of Contract

Piccoli claims that by exporting its surplus jeans to Scandinavia, Jeanswear breached the clause in the CKI/Jeanswear Agreement prohibiting it from selling or distributing the jeans outside of North America. Though not a party to the CKI/Jeanswear Agreement, Piccoli asserts that it has standing to enforce that contract as a third party beneficiary.[24]

▇▇▇ Under New York law,[25] only an intended beneficiary of a contract may assert a claim as a third-party beneficiary.[26] A third party is an intended beneficiary where either (1) "no one other than the third party can recover if the promisor breaches the contract" [27] or (2) "the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." [28]

▇▇▇ Piccoli manifestly does not qualify as an intended third-party beneficiary under the first prong of the test. The CKI/Jeanswear Agreement explicitly states that CKI has the right "to be compensated for damages for breach of this Agreement and to enjoin the unlawful or unauthorized use of the Licensed Marks." [29] The complaint alleges also that European had the opportunity but refused to sue Jeanswear as a result of the alleged breach of contract.[30]

---

21. *Id.* ¶ 48.

22. *Id.* ¶ 49.

23. *Id.* ¶ 50.

24. Pl.Br. at 3.

25. On a motion to dismiss, the Court is entitled to consider documents incorporated by reference into the complaint. *See, e.g., Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). The CKI/Jeanswear Agreement, which is such a document, provides with an exception not here relevant that it shall be governed by New York law. Jeanswear Ex. A, CKI/Jeanswear Agreement ¶ 14.7.

26. *See Mortise v. United States,* 102 F.3d 693, 697 (2d Cir.1996); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 4–5, 485 N.E.2d 208 (1985).

27. *Fourth Ocean,* 66 N.Y.2d at 45, 495 N.Y.S.2d at 5, 485 N.E.2d 208 (citing *Seaver v. Ransom,* 224 N.Y. 233, 239, 120 N.E. 639 (1918); *Matter of International Ry. Co. v. Rann,* 224 N.Y. 83, 88, 120 N.E. 153 (1918)).

28. *Id.* (citing *McClare v. Massachusetts Bonding & Ins. Co.,* 266 N.Y. 371, 379, 195 N.E. 15 (1935); *Rigney v. New York Cent. & H.R.R. Co.,* 217 N.Y. 31, 38, 111 N.E. 226 (1916)). The example given in *Fourth Ocean* is a contract which, despite there being no duty between the promisee and the beneficiary, fixes the rate or price at which the beneficiary can obtain services or goods. *Id.* (citing *Pond v. New Rochelle Water*

*Co.,* 183 N.Y. 330, 336, 76 N.E. 211 (1906); *Little v. Banks,* 85 N.Y. 258 (1881)).

29. CKI/Jeanswear Agreement ¶ 11.5. Even if, as Piccoli argues, this provision is triggered only by termination of the CKI/Jeanswear Agreement, CKI even so is entitled under ordinary principles of contract law to enforce the agreement.

30. Cpt. ¶ 59.

Piccoli rejoins that it has satisfied this prong by alleging, in its brief but not in its complaint, that it has suffered unique damages and that no other entity has an exclusive right to distribute in Scandinavia. Pl.Br. at 11; *id.* n. 14. Because a party is not entitled to amend its complaint through statements made in its motion papers, the Court disregards these allegations. *See, e.g., Wright v. Ernst & Young LLP,* 152 F.3d, 169, 175 (2d Cir.1998) (citing *IIT v. Cornfeld,* 619 F.2d 909, 914 & n. 6 (2d Cir.1980); *Jacobson v. Peat Marwick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y.1977)).

In any event, these allegations would not suffice to resuscitate Piccoli's claim. Piccoli complains that the imports destroyed the upscale market for Calvin Klein jeans in Scandinavia, but its contention that only it has been harmed by this loss rings hollow. The collapse Piccoli's customer base harmed European insofar as Piccoli was forced to reduce its own purchases from European, which in turn translated into a harm to CKI, even though Piccoli's contract obligation to make minimum purchases from European ameliorated this harm somewhat. Similarly, the emphasis on Piccoli's role as exclusive distributor is irrelevant in light of CKI's indisputable right to enforce the

■ Nor has Piccoli alleged facts sufficient to show that the CKI/Jeanswear Agreement "otherwise clearly evidences an intent to permit enforcement by [Piccoli]." [31] The requirement of an intent to permit enforcement by the third party is satisfied by demonstrating an intent to benefit that party.[32] Although a "party need not necessarily be specifically mentioned in a contract to be considered a third-party beneficiary," [33] the parties' intention to benefit the third party nonetheless must be revealed "on the face of the agreement." [34]

■ Piccoli contends that such an intention is implicit in the "Cooperation Clause" of the CKI/Jeanswear Agreement, wherein Jeanswear promised that it

"shall not export Articles from the Territory [the Americas] and shall not sell Articles to any third party which [Jeanswear] knows or has reason to know will export Articles from the Territory ... [and] will cooperate with [CKI] with respect to prohibiting the diversion of Products into [CKI's] third party licensee's and distributors' territories." [35]

Piccoli argues that the clear intent of this clause was to benefit not only CKI, but also CKI's exclusive distributors in other territories, and that the face of the contract therefore demonstrates an intention to benefit Piccoli.[36]

Jeanswear responds that the CKI/Jeanswear Agreement not only does not evidence an intention to benefit third parties but, on the contrary, reveals an intention *not* to benefit anyone other than the signatories. Jeanswear draws this conclusion from a provision in the contract containing both non-assignment and inurement clauses:

"This Agreement is of a personal nature with respect to [Jeanswear] and, therefore, except as provided below, neither this Agreement nor the license or other rights granted hereunder may be sublicensed, assigned or transferred by [Jeanswear] except with [CKI's] prior written consent.... Except as otherwise provided herein, this Agreement shall inure to the benefit of and shall be binding upon the parties and permitted successors and assigns." [37]

The prohibition on assignments and the specification that the contract inures to the benefit of and binds the parties except as otherwise indicated, Jeanswear argues, makes plain the parties' intention to preclude third-party enforcement.

Courts in this district have construed similar provisions as inconsistent with the existence of an intention to confer a benefit upon a third party. In *Sazerac Co. v. Falk*,[38] for example, the court relied in part upon nearly identical provisions in concluding that the contract in question manifested the parties' intention not to benefit third parties.[39]

---

territorial restrictions contained in the CKI/Jeanswear Agreement.

**31.** *Fourth Ocean,* 66 N.Y.2d at 45, 495 N.Y.S.2d at 5, 485 N.E.2d 208 (citations omitted).

**32.** *See id.* (contract provision benefitting third party by entitling it to goods or services at a stated rate is sufficient to establish an intent to permit enforcement by the third party); *Artwear, Inc. v. Hughes,* 202 A.D.2d 76, 83, 615 N.Y.S.2d 689, 693 (1st Dept.1994) (necessary to demonstrate an intent that performance benefit the third party).

**33.** *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 663 (2d Cir.1996) (citing Restatement (Second) of Contracts, § 302(1) (1981); *In re Gulf Oil/Cities Service Tender Offer Litigation,* 725 F.Supp. 712, 733 (S.D.N.Y.1989)).

**34.** *Id.* (quoting *In re Gulf Oil,* 725 F.Supp. at 733).

**35.** CKI/Jeanswear Agreement ¶ 1.5

**36.** Piccoli emphasizes that it is identified as one of CKI's third party licensees in a schedule attached to the CKI/Jeanswear Agreement. Jeanswear points out, however, that Piccoli no longer was CKI's licensee by the time of the events of which Piccoli complains. By that time, Piccoli was a sub-licensee distributor. Thus, the question is whether, through the contract's cooperation provision, the parties contemplated conferring the benefit of Jeanswear's cooperation on sub-licensee distributors such as Piccoli.

**37.** CKI/Jeanswear Agreement ¶ 14.2.

**38.** 861 F.Supp. 253 (S.D.N.Y.1994).

**39.** *Id.* 861 F.Supp. at 258 (citing *In re Gulf Oil,* 725 F.Supp. at 733; *Grondin v. Rossington,* 690 F.Supp. 200, 207 (S.D.N.Y.1988); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* No. 91

■ Insofar as *Sazerac* stands for the proposition that the existence of a non-assignment clause alone suffices to preclude assertion of intended third-party beneficiary status, the Court cannot agree. After all, it is possible for parties to intend that a third party enjoy enforceable rights while at the same time intending to limit or preclude assignments. An inurement clause, when taken together with a prohibition of assignments, on the other hand, does suggest that the parties did not intend that third parties benefit from the contract. Language specifying that the benefit of a contract is to inure to the contract's signatories arguably is superfluous unless it serves to limit the category of beneficiaries.[40] This is the wisdom behind the maxim *expressio unus est exclusio alterus*. Accordingly, the Court holds that the CKI/Jeanswear Agreement was not intended to benefit third-party beneficiaries such as Piccoli.

■ Piccoli seeks to avoid the impact of the CKI/Jeanswear Agreement's plain language with arguments based on extrinsic evidence and reliance. Even if appropriately considered,[41] these arguments would not alter the Court's conclusion. According to Piccoli, the extrinsic evidence reveals that at the time the parties agreed to the CKI/Jeanswear Agreement, both were aware that Piccoli had possessed exclusive distribution rights in Scandinavia for years[42] and that CKI's global distribution network necessitated mutual respect of each distributors' territories,[43] and it was in CKI's own interest to secure protection of Piccoli's rights. These allegations, however, do not dilute the impact of the inurement and non-assignment clauses. Similarly, Piccoli's expenditure of "time, money, and effort in promoting and trying to maintain the prestigious market for Calvin Klein jeans in Scandinavia"[44] do not alter the plain meaning of the CKI/Jeanswear Agreement.

Piccoli cannot establish intended third-party beneficiary status because it is apparent from the face of the contract that the parties intended to limit to themselves the ability to enforce the agreement. Piccoli's breach of contract claim therefore is dismissed.

## B. Breach of Duty of Good Faith and Fair Dealing

■ Piccoli next contends that Jeanswear breached its duty of good faith and fair dealing by exporting jeans to Scandinavia.[45] Jeanswear moves to dismiss this claim on the ground that no such duty existed.

■ It is well-settled under New York law that "an implied covenant of good faith

---

Civ. 5153(SWK), 1994 WL 17952, at * 12 (S.D.N.Y. Jan. 18, 1994), *vacated in part on other grounds*, 73 F.3d 1253 (2d Cir.1996)); *see also United International Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F.Supp. 367 (S.D.N.Y.1997). The court cited the following language:
"SECTION 13.4 *Assignment.* Neither this Agreement nor any right, remedy, obligation or liability arising hereunder or by reason thereof shall be assignable by any party to this Agreement without the prior written consent of the other parties.

\* \* \* \* \* \*

"SECTION 13.6 *Binding Effect.* This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns." *Sazerac,* 861 F.Supp. at 258.

40. A contract should be interpreted so as to give meaning to all of its provisions. *See PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996).

41. There is considerable dispute concerning whether it is appropriate to consider extrinsic evidence on this point. *Compare, e.g., Fourth*

*Ocean,* 66 N.Y.2d at 45, 495 N.Y.S.2d at 5, 485 N.E.2d 208; *Newman & Schwartz,* 102 F.3d at 663; *with Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 573 (2d Cir.1991); *Cutler v. Hartford Life Ins. Co.,* 22 N.Y.2d 245, 253, 292 N.Y.S.2d 430, 438, 239 N.E.2d 361 (1968).

Reliance upon a contract provision does not generate a right to enforce the contract in a third party. *Artwear,* 202 A.D.2d at 84, 615 N.Y.S.2d at 694.

42. Cpt. ¶¶ 21, 54.

43. *Id.* ¶ 53.

44. Notably, Piccoli does not allege that it actually knew of Jeanswear's promise to CKI at the time that Piccoli signed the European/Piccoli Agreement. Rather, as it states in its brief, "[a]lthough Piccoli did not have a copy of the [CKI/Jeanswear Agreement], it reasonably assumed that it contained similar provisions to Piccoli's contract." Pl.Br. at 8 n. 10.

45. Cpt. ¶¶ 62–66.

and fair dealing is inherent to every contract." [46] Here, however, Piccoli can point to no contract between itself and Jeanswear.[47] Nor, in view of what has been said already, may it enforce the implied covenant in the CKI/Jeanswear Agreement on a third-party beneficiary theory.

Piccoli's attempt to extend the duty of good faith and fair dealing throughout the network of independent contracts forming the CKI distribution system also fails. *In re Houbigant* [48] is instructive. There, the court rejected an argument that where "each of the various independent agreements are in fact part of a single unified agreement," the implied duty runs among all contracting parties, even in the absence of direct contractual relationships.[49] Here, the various contracts that Piccoli seeks to link are not even part of a single unified agreement.

Perhaps recognizing the infirmity of its good faith and fair dealing claim, Piccoli's motion papers attempt to relabel this contract claim as a tort claim. As remodeled, it asserts that Jeanswear breached not an implied covenant of good faith and fair dealing, as stated in the complaint, but, instead, a tort duty to respect the integrity of Piccoli's exclusive distribution territory.[50] Piccoli argues that this duty arises out of the CKI/Jeanswear Agreement and the circumstances surrounding it, such as the existence of CKI's other distribution contracts.[51] Even assuming that it were appropriately considered, this argument would be without merit.

Piccoli invokes a line of New York cases, beginning with *Rich v. New York Central & H.R.R. Co.*,[52] which establishes that a contract in certain circumstances generates not merely contractual obligations but also a relationship which gives rise to other legal duties between the parties.[53] Such duties arise where "extraneous circumstances and conditions, in connection with [the contract],... establish such a relation as to make [the contract's] performance a legal duty, and its omission a wrong to be addressed." [54] How this rule advances Piccoli's cause is unclear, as Piccoli can point to no contract to which both it and Jeanswear are parties.

Piccoli seeks to rely instead on the CKI/Jeanswear Agreement and its circumstances. Piccoli offers no authority, however, for the proposition that the rule in *Rich* may be detached from its contract moorings in this manner. In the absence of such authority, the Court declines to take the view that New York law imposes legal duties running between non-contracting parties merely on the basis that the parties share similar roles in a series of contracts comprising a distribution network. Piccoli's claim for breach of the duty of good faith and fair dealing is dismissed.

### Other Claims—All Defendants

In addition to its contract and federal law claims, Piccoli asserts that the defendants are liable for unjust enrichment, unfair competition, and tortious interference with business relations.

---

**46.** *Frutico S.A. de C.V. v. Bankers Trust Co.*, 833 F.Supp. 288, 300 (S.D.N.Y.1993) (citing *Grad v. Roberts*, 14 N.Y.2d 70, 75, 248 N.Y.S.2d 633, 637, 198 N.E.2d 26 (1964); *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir.1975)).

**47.** *See Four Star Capital Corp. v. Nynex Corp.*, —— F.R.D. ——, 1997 WL 598411, at *8 (S.D.N.Y. Sept. 25, 1997) (no duty of good faith and fair dealing absent enforceable contract) (citing *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984) (no duty to negotiate in good faith absent underlying contract)).

**48.** 914 F.Supp. 964 (S.D.N.Y.1995).

**49.** *Id.* 914 F.Supp. at 994–95.

**50.** Pl.Br. 11–13.

**51.** *Id.*

**52.** 87 N.Y. 382 (1882).

**53.** *Id.* 87 N.Y. at 398–99; *see also Meyers v. Waverly Fabrics*, 65 N.Y.2d 75, 80 n. 2, 489 N.Y.S.2d 891, 894 n. 2, 479 N.E.2d 236 (1985); *North Shore Bottling Co. v. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 92, 239 N.E.2d 189 (1968); *Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 176, 277 N.Y.S.2d 505, 510–11 (1st Dept.1967).

**54.** *Albemarle Theatre*, 27 A.D.2d at 176, 277 N.Y.S.2d at 510–11 (citing *Rich*, 87 N.Y. at 398–99).

■ Defendant World Apparel contends, as a threshold matter, that these non-federal claims must be dismissed because, under New York's choice of law rules, this action is governed by Danish law. This argument is flawed, however, because no party has identified any conflict between New York and Danish law warranting the choice of law inquiry. Indeed, in the absence of a purported conflict it is not possible even to begin that inquiry, as "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." [55] The Court therefore proceeds to the merits of defendants' other arguments for dismissal.

### A. Unjust Enrichment

■ In support of its unjust enrichment cause of action, Piccoli alleges that it "has invested six years of effort, thousands of hours and hundreds of thousands of dollars in creating a reputable and prestigious market for Calvin Klein jeans in Scandinavia, where the Calvin Klein name had been virtually unknown prior to Piccoli's efforts." [56] Piccoli alleges further that defendants "are unlawfully exploiting and free-riding on Piccoli's efforts by producing and selling [Jeanswear's] products in large volumes to discount stores in [Scandinavia.]" [57] As a result, "Piccoli's carefully-cultivated upscale market

for Calvin Klein jeans has been ruined; approximately 90% of Piccoli's customers have canceled their orders and discontinued future business relations." [58] Piccoli thus contends that it is entitled to restitution of the profits attributable to defendants' sales in Scandinavia. [59]

■ As a general matter, in order to state a claim for unjust enrichment claim under New York law "plaintiff must show that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution." [60] Piccoli argues that its allegations are sufficient in light of the broad language of these three elements. But Piccoli fails to account for the nature of the unjust enrichment cause of action.

■ Unjust enrichment sounds in quasi-contract. [61] This is significant, particularly with regard to the third element of the claim, as a plaintiff, "in order to recover under a theory of quasi-contract, ... must ... prove that performance was rendered for the defendant, resulting in its unjust enrichment." [62] As the First Department stated in *Kagan v. K–Tel Entertainment, Inc.:* [63]

"[a]s reflected in the common law of the various states, to recover under a theory of quasi contract, a plaintiff must demon-

---

**55.** Matter of *Allstate Insurance Co. and Stolarz,* 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936 (1993).

**56.** Cpt. ¶ 2.

**57.** *Id.* ¶¶ 3, 68.

**58.** *Id.* ¶ 4.

**59.** *Id.* ¶ 69.

**60.** *Violette v. Armonk Associates, L.P.,* 872 F.Supp. 1279, 1282 (S.D.N.Y.1995): *accord Michel Pommier Models, Inc. v. Men Women NY Model Management, Inc.,* No. 97 Civ. 6837(SAS), 1998 WL 382004, at *7 (S.D.N.Y. Jul. 8, 1998); *ICC Industries, Inc. v. Sifavitor S.p.A.,* No. 96 Civ. 5757(LAK), 1997 WL 214969, at *5 (S.D.N.Y. Apr. 28, 1997); *In re Motel 6 Securities Litigation,* Nos. 93 Civ. 2183(JFK), 93 Civ. 2866(JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997);

**61.** *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 905 (2d Cir.1997) ("[U]nder the quasi-contractual doctrine of unjust enrichment, courts

may infer the existence of an implied contract to prevent one person from unjustly enriching himself at the other party's expense.").

**62.** *Metropolitan Electric Manufacturing Co. v. Herbert Construction Co., Inc.,* 183 A.D.2d 758, 759, 583 N.Y.S.2d 497, 498 (2d Dept.1992) (citing *Kagan v. K–Tel Entertainment,* 172 A.D.2d 375, 376, 568 N.Y.S.2d 756, 757 (1st Dept. 1991)); *see also Michele Pommier,* 1998 WL 382004, at *7; *Amana Elevation Corp. v. Ydrohoos–Aquarius, Inc.,* 244 A.D.2d 371, 664 N.Y.S.2d 88. 89 (2d Dept.1997), *leave to appeal denied,* 91 N.Y.2d 806, 668 N.Y.S.2d 561, 691 N.E.2d 633 (1998); *Schuckman Realty, Inc. v. Marine Midland Bank, N.A.,* 244 A.D.2d 400, 664 N.Y.S.2d 73, 74–75 (2d Dept.1997), *leave to appeal denied,* 91 N.Y.2d 809, 670 N.Y.S.2d 404, 693 N.E.2d 751 (1998). *Heller v. Kurz,* 228 A.D.2d 263, 264, 643 N.Y.S.2d 580, 582 (1st Dept.1996).

**63.** 172 A.D.2d 375, 568 N.Y.S.2d 756.

strate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery." [64]

In this case, the performance at issue is Piccoli's creation of demand in Scandinavia for Calvin Klein jeans, a performance indisputably not rendered for the defendants. On the contrary, Piccoli performed for its own benefit and perhaps the benefit of its customers and its contract partners, European and CKI. Defendants' actions in tapping into the demand created by Piccoli therefore cannot give rise to a claim for quasi-contractual relief. [65]

### B. Tortious Interference with Business Relations

Piccoli contends that by exporting Jeanswear's jeans to Scandinavia, defendants caused "a number of Piccoli's customers ... to cancel orders for Calvin Klein jeans and to not place future orders that otherwise would have been made." [66] Piccoli does not allege,

however, that defendants' conduct caused any of these customers to breach a contract with Piccoli. Thus Piccoli's cause of action is not one for tortious interference with contractual relations but, instead, for tortious interference with business relations. [67]

Piccoli's tortious interference with business relations claim rests on the allegation that the defendants exported Jeanswear's surplus Calvin Klein jeans to "lower-end stores" in Scandinavia and that the presence of these jeans in lower-end stores caused Piccoli's exclusively upper-end clients to cease doing business with it. [68] Defendants argue, correctly, that such an indirect relationship cannot form the basis of a tortious interference claim.

"It is clear ... that under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." [69]

Here, the defendants' alleged conduct concededly was not directed towards any third

---

**64.** 172 A.D.2d at 376, 568 N.Y.S.2d at 757.

**65.** To the extent that *Schmid, Inc. v. Zucker's Gifts, Inc.*, 766 F.Supp. 118 (S.D.N.Y.1991), is inconsistent with this result, the Court declines to follow it. *Schmid* denied a motion to dismiss an unjust enrichment claim in circumstances similar to these, after asserting that New York courts apply a "liberal interpretation to the elements for a cause of action for unjust enrichment." *Id.* 766 F.Supp. at 122. *Schmid* did not, however, cite any authority, other than an earlier reference to the adaptability of the doctrine of constructive trusts to new circumstances, for the proposition that New York law interprets the scope of unjust enrichment claims liberally. *Id.* Nor did *Schmid* mention either the actual elements of an unjust enrichment claim or, more significantly, the principle that recovery in quasi-contract will not lie absent an allegation that performance was rendered for the defendant. Similarly, the court in *Italian & French Wine Co. v. Negociants U.S.A.*, 842 F.Supp. 693 (W.D.N.Y. 1993), in the course of upholding an unjust enrichment claim in like circumstances, did not discuss the requirement that performance be rendered for the benefit of the defendant. *Id.* 842 F.Supp. at 702.

**66.** Cpt. ¶ 106.

**67.** It is necessary to draw this distinction because Piccoli, despite properly styling this cause of action as one for tortious interference with business relations, relies in its memorandum at least in part on precedents addressing tortious interference with contractual relations. *See, e.g.,* Pl.Br. at 19 n. 19 (citing *Robert J. McRell Associates, Inc. v. Insurance Co. of North America*, 677 F.Supp. 721, 729 (S.D.N.Y.1987) (stating elements of tortious interference with contractual relations claim)).

**68.** Cpt. ¶¶ 25, 27, 31, 50, 103–106.

**69.** *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp. 477, 482 (S.D.N.Y.1997) (citing *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir.), *cert. denied*, 516 U.S. 944, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995) ("It is axiomatic that, in order to prevail on this claim [of tortious interference with prospective business relations], the [plaintiff] would have to show that the [defendant] intentionally caused the [customers] not to enter into a contractual relation with them.")); *see Advanced Marine Technologies, Inc. v. Burnham Securities, Inc.*, 16 F.Supp.2d 375, 385 (S.D.N.Y.1998) (same).

party with whom Piccoli had an existing or prospective business relationship. In light of this failure to come within the limited scope of this cause of action, Piccoli has failed to state a claim for tortious interference with business relations.

### C. Unfair Competition

■ "Under New York common law, the essence of unfair competition is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.' " [70] Defendants contend that Piccoli's unfair competition claim should be dismissed not because it fails to allege these elements but because Piccoli lacks sufficient interest in the Calvin Klein mark to establish standing. Defendants argues also that the unfair competition claim is duplicative of Piccoli's breach of contract claim. These arguments are without merit.

Defendants contend first that Piccoli cannot have any actionable interest in the Calvin Klein mark because the CKI/European Agreement specifically reserved the right to initiate litigation for trademark infringement to CKI and because Piccoli's rights cannot exceed European's.[71] Even if European possessed such a right, defendants argue, it is plain from the face of the European/Piccoli Agreement that no such interest could have been transferred to Piccoli.[72]

■ Defendants misconceive the nature of the standing requirement in this context. As the Second Circuit explained in *Berni v. International Gourmet Restaurants of America,*[73] standing to assert a cause of action for unfair competition under New York law requires pleading of facts "supporting a colorable property or pecuniary interest."[74] Although it is clear from the contracts that Piccoli lacks an ownership interest in the Calvin Klein mark sufficient, for example, to support a suit for trademark infringement under Section 32 of the Lanham Act,[75] it is equally clear that Piccoli, at the time of the alleged injury, had a pecuniary interest in the mark resulting from its exclusive distributorship.[76] Piccoli therefore has standing to assert a claim of unfair competition.

---

**70.** *Forschner Group, Inc. v. Arrow Trading Co., Inc.,* 124 F.3d 402, 408 (2d Cir.1997) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 34 (2d Cir.1995) (quotations and citations omitted)).

**71.** Defendants point out that the CKI/European Agreement provides that CKI "is the beneficial owner of all right, title and interest in and to the Licensed Mark as to Products in the Territory in any form or embodiment thereof and is also the owner of the goodwill attached or which shall become attached to the Licensed Mark." Jeanswear Ex. B, CKI European Agreement ¶ 13.2. Further, CKI and European covenanted that "[European] will have no right to take any action with respect to the Licensed Mark without [CKI's] prior written approval." *Id.* ¶ 14.

**72.** In the European/Piccoli Agreement, Piccoli acknowledged that its rights were "subject to the terms and conditions of the [CKI/European Agreement]." Jeanswear Ex. C, European/Piccoli Agreement ¶ 6.2 ("European/Piccoli Agreement"). The European/Piccoli Agreement provides also that

"[Piccoli] recognizes as of now that it does not have any rights with respect to the trademarks, copyrights, commercial names, brand names, registered names, distinctive markings, etc. of the Products, or with respect to patents or models and other industrial property rights ...

nor will it have such rights after the termination of this Agreement." *Id.* ¶ 17.

"[Piccoli] shall not acquire any property rights in the 'Calvin Klein' trademarks, copyrights, commercial names, brand names, registered names, distinctive markings, etc. through the use of the same hereunder, and shall immediately cease the use of the same upon the termination or expiration of this Agreement." *Id.* ¶ 18.3.

"[European] and [CKI] are responsible for the protection and maintenance of the trademarks, copyrights, commercial names, brandnames, registered names, distinctive markings, design patents, patents, etc. in connection with the Products in the Territory, and will bear all the costs and expenses relative to such protection and maintenance in the Territory." *Id.* ¶ 21.1. Finally, Piccoli undertook to "assist [European] with respect to any legal proceedings that may be initiated by [European] and/or [CKI] for any infringement of the above intellectual and industrial property or other acts of unfair competition in the Territory." *Id.* ¶ 21.2.

**73.** 838 F.2d 642 (1988).

**74.** *Id.* 838 F.2d at 648.

**75.** *See id.* 838 F.2d at 646–47.

**76.** Defendants contend that, because the European/Piccoli Agreement is no longer in force, Picco-

Defendants contend next that the unfair competition claim should be dismissed as duplicative of the breach of contract action. The Court is not persuaded.

Defendants seek to analogize the present case to *Tap Publications v. Chinese Yellow Pages (New York)*[77] and *Silverstar Enterprises, Inc. v. Aday.*[78] *Tap Publications* dismissed a Lanham Act claim on the ground that it was nothing more than a claim for breach of contract where the crux of the underlying dispute was whether the defendant had licensed the disputed mark to a third party and whether that third party in turn properly had assigned its rights in the mark to the plaintiff.[79] Similarly, the plaintiff/licensee in *Silverstar* sued its licensors after learning that the licensors had granted a third party the right to use the mark in apparent violation of the plaintiff/licensee's contract rights.[80] The *Silverstar* court therefore dismissed the plaintiff's Lanham Act and unfair competition claims on the ground that they were nothing more than breach of contract claims.[81]

Unlike the plaintiffs in *Tap Publications* and *Silverstar Enterprises,* Piccoli's right to relief for unfair competition does not rest entirely, or even largely, upon issues of contract interpretation. The essence of the claim is that defendants' action in selling Calvin Klein jeans into plaintiff's arguably exclusive territory was akin to misappropriation or passing off, traditional bases of unfair competition relief. While it is true that the various licensing agreements among CKI. European, Piccoli, and Jeanswear determine the scope of Jeanswear and Piccoli's respective territories, there is no claim that the defendants' alleged conduct was legitimate under those contracts or that Piccoli's interest in the mark deriving from these contracts is open to question. Moreover, there is no contract between plaintiff and the defendants in this case, and the Court has rejected Piccoli's attempt to establish its status as an intended third-party beneficiary of the contract governing Jeanswear's trademark rights. Thus, this dispute cannot "be determined by the principles of contract law" alone but, instead, is subject to principles such as the common law of unfair competition, which "establish[ ] marketplace rules governing the conduct of parties not otherwise limited."[82] For all of these reasons, defendants' motion to dismiss Piccoli's unfair competition claim is denied.

### Lanham Act and Paris Convention Claims—All Defendants

Piccoli asserts that defendants' export of Calvin Klein jeans to Scandinavia, which allegedly deceived Scandinavian retailers and consumers as to the quality and origin of the jeans, violated Section 43(a) of the Lanham Act[83] as well as the prohibition against unfair competition contained in the International Convention for the Protection of Industrial Property (the "Paris Convention"),[84] as implemented by Section 44 of the Lanham Act.[85] Defendants argue that these claims must be dismissed because (1) the conduct alleged is not within the scope of the Lanham Act or the Paris Convention, (2) Piccoli lacks

---

li no longer has a pecuniary interest and therefore lacks standing. This argument has no merit, because the injury of which Piccoli complains took place while the European/Piccoli Agreement was in force and thus Piccoli had the requisite pecuniary interest at the relevant time.

77. 925 F.Supp. 212 (S.D.N.Y.1996).

78. 537 F.Supp. 236 (S.D.N.Y.1982).

79. 925 F.Supp. at 217.

80. 537 F.Supp. at 237–38.

81. *Id.* 537 F.Supp. at 241–42.

82. *Id.* 537 F.Supp. at 242.

83. 15 U.S.C. § 1125.

84. 21 U.S.T. 1583, T.I.A.S. 6923; 24 U.S.T. 2140, T.I.A.S. 7727. Article 10*bis* of the Paris Convention states that "(1) The countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition. (2) Any act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition." 24 U.S.T. 2140 (July 14, 1967). Article 10*ter* provides further that the "countries of the Union undertake to assure to nationals of the other countries of the Union appropriate legal remedies effectively to repress all the acts referred to in Articles 9, 10 and 10*bis*." *Id.*

85. 15 U.S.C. § 1126(b).

sufficient interest in the Calvin Klein mark to assert these claims, (3) the claims are duplicative of Piccoli's contract claim, and (4) the Paris Convention does not provide a right to relief distinct from the Lanham Act.

### A. Extraterritorial Application of the Lanham Act

■ Piccoli's false designation of origin claim seeks to apply the Lanham Act to conduct, any deceptive effect of which occurred in Scandinavia. Defendants assert that the Act may not be so applied.

The issue before the Court in the first instance is one of statutory interpretation—determination of whether Congress intended that the Lanham Act be applied to the conduct at bar. And while the case finds analogies in other federal statutes,[86] the question ultimately depends upon Congress' intention with respect to the Lanham Act.[87]

There is little doubt that the Lanham Act has some extraterritorial effect. In *Steele v. Bulova Watch Co.*,[88] the Supreme Court applied the statute to an American defendant's manufacture and sale of fake Bulova watches in Mexico where the defendant purchased component parts in the United States and some of the watches found their way into Texas with consequent damage to Bulova's goodwill in this country. And in *Vanity Fair Mills v. T. Eaton Co.*,[89] the Second Circuit set forth three factors for courts to consider in determining whether extraterritorial application of the Lanham Act is appropriate:

"(i) whether the defendant is a United States citizen; (ii) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (iii) whether the defendant's conduct has a substantial effect on United States commerce."[90]

It is undisputed that the first two *Vanity Fair* factors are present in this case, but there is considerable dispute concerning whether the substantial effect factor is met. Piccoli points to an array of allegations concerning the domestic conduct of the defendants, while defendants argue that conduct is distinct from effect and that there is no domestic effect here. The dispute is significant, for the absence of a substantial effect on domestic commerce would be fatal to a plaintiff's attempt to apply the Lanham Act to extraterritorial conduct regardless of whether the first two factors are satisfied.[91]

A substantial effect on United States commerce clearly exists where a defendant's conduct results in consumer confusion or harm to the plaintiff's goodwill in the United States.[92] Some courts have concluded that a substantial effect on United States commerce exists also where "the defendant's activities are supported by or related to conduct in United States commerce."[93] Indeed, in *Levi*

**86.** See, e.g., *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (antitrust laws apply to "foreign conduct that was meant to produce and did ... produce ... substantial effect in" U.S.); *North South Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1050–53 (2d Cir.1996) (Racketeer and Corrupt Organizations Act does not apply to acts in U.S. preparatory to fraud abroad); *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 121–22 (2d Cir.1995), cert. denied, 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996) (antifraud provisions of federal securities laws apply where conduct material to the completion of the fraud or substantial effects occur in the U.S.).

**87.** See *North South Fin. Corp.*, 100 F.3d at 1052.

**88.** 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952).

**89.** 234 F.2d 633 (2d Cir.1956), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956).

**90.** *Atlantic Richfield v. ARCO Globus International Co., Inc.*, 150 F.3d 189, 191–92 (2d Cir.1998) (citing *Totalplan Corp. of America v. Colborne*, 14 F.3d 824, 830 (2d Cir.1994) (citing *Vanity Fair*, 234 F.2d at 642)).

**91.** See *id.*, 150 F.3d at 193 (holding Lanham Act inapplicable to extraterritorial conduct where no substantial effect on U.S. commerce even though defendant was a United States citizen and there was no conflict with the law of another nation).

**92.** See, e.g., *id.* 150 F.3d at 192; *Totalplan*, 14 F.3d at 830.

**93.** *Calvin Klein Industries, Inc. v. BFK Hong Kong, Ltd.*, 714 F.Supp. 78, 80 (S.D.N.Y.1989) (noting that in *Bulova Watch*, the Supreme Court relied in part upon defendant's purchase of component parts in the United States); see also *Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino*, 945 F.Supp. 563, 567 (S.D.N.Y.1996) ("A

*Strauss & Co. v. Sunrise International Trading, Inc.*,[94] a case quite similar to this one, the Eleventh Circuit upheld a preliminary injunction barring shipment of counterfeit jeans to foreign countries based on the fact that negotiations and arrangements for the shipments were made in the United States.[95] It is not clear, however, whether this second line of cases—those finding a substantial effect on United States commerce on the basis of domestic conduct related to or supportive of deceptive actions abroad—would be followed in this Circuit.

In *Totalplan Corp. of America v. Colborne*,[96] the Circuit held that packaging in and shipment of goods from the United States were an insufficient basis for application of the Lanham Act. More recently, in *Atlantic Richfield Co. v. Arco Globus International Co.*,[97] the Court of Appeals affirmed the dismissal of Lanham Act claims against a defendant who used colorable imitations of plaintiff's registered trademark to identify its own operations in Russia on the ground that the Lanham Act did not reach defendant's conduct despite the fact that the defendant conducted some business activities, although not allegedly infringing ones, in the United States. In doing so, it distinguished *Bulova* on the ground, *inter alia*, that "*Bulova* does not hold that a defendant's domestic activity, even if 'essential' to infringing activity abroad, is alone sufficient to cause a substantial effect on United States commerce." [98]

While this comment strongly suggests that the Lanham Act does not reach conduct abroad unless it deceives U.S. consumers, there is other language in *Atlantic Richfield*

that may point in the other direction. In summarizing its holding later in the opinion, the Court said:

"Where (i) an alleged infringer's foreign use of a mark does not mislead American consumers in their purchases or cause them to look less favorably upon the mark; (ii) the alleged infringer does not physically use the stream of American commerce to compete with the trademark owner by, for example, manufacturing, processing, or transporting the competing product in United States commerce; and (iii) none of the alleged infringer's American activities materially support the foreign use of the mark, the mere presence of the alleged infringer in the United States will not support extraterritorial application of the Lanham Act." [99]

This passage thus arguably suggests that the Lanham Act is inapplicable only where *none* of the three enumerated circumstances exists and thus that it applies where *any* is present.

In this case, Piccoli alleges that the defendants engaged in an organized scheme pursuant to which Jeanswear sent promotional materials to prospective purchasers which invited them to come to its U.S. showrooms to view, negotiate for and purchase Calvin Klein jeans for unrestricted international distribution.[100] This domestic activity thus allegedly went somewhat beyond that at issue in *Totalplan* and surely was a use of the physical stream of American commerce that was essential to the alleged infringement.

Complaints ought not be dismissed at the pleading stage unless it is clear that plaintiff

---

substantial effect on United States commerce may arise from a defendant's activities that are supported by or related to conduct in United States commerce.")

This conduct-oriented test is akin to the "conduct test" employed in the context of the extraterritorial application of the federal securities laws. *See, e.g., North South Finance Corp.*, 100 F.3d at 1051; *cf. Aerogroup Intern., Inc. v. Marlboro Footworks*, 955 F.Supp. 220, 228 n. 13 (S.D.N.Y. 1997) (observing that cases involving non-citizen defendants have augmented the substantial effect requirement by requiring also a nexus between the defendant's conduct in the United States and the infringing conduct, and comparing this requirement to the conduct test in the securities law context), *aff'd*, 152 F.3d, 948, 1998 WL

169251 (Fed.Cir.1998), *petition for cert. filed*, 67 U.S.L.W. 3149 (U.S. Aug. 17, 1998) (No. 98–290).

**94.** 51 F.3d 982 (11th Cir.1995).

**95.** 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:24[4] (4th ed.1998).

**96.** 14 F.3d 824.

**97.** 150 F.3d 189, 1998 WL 418104.

**98.** *Id.* 150 F.3d at 192.

**99.** *Id.* 150 F.3d at 193.

**100.** Cpt. ¶¶ 39–41.

can prove no state of facts that would entitle it to relief. In all the circumstances, the Court is unable to reach such a conclusion at this stage of this lawsuit. Accordingly, the motion to dismiss the Lanham Act claim is denied, although the issue may be raised later on a fuller record.

### B. Remaining Arguments

▌ Defendants argue in the alternative that Piccoli lacks sufficient interest in the Calvin Klein mark to assert a false designation of origin claim. Defendants, however, confuse the interest necessary to establish standing in the context of a Section 32 trademark infringement claim with the level necessary to pursue a Section 43 false designation of origin claim. In the former case, the plaintiff must have an ownership interest in the mark but, in the latter, the plaintiff need show only potential commercial or competitive injury.[101] Piccoli's claim is of the latter variety. Piccoli's standing therefore is established by its pecuniary interest for the same reasons stated previously by the Court in the course of rejecting defendants' argument that Piccoli lacks standing to assert its unfair competition claim.

Defendants argue next that Piccoli's Lanham Act claim must be dismissed as duplicative of its contract claims. This argument is without merit for the reasons discussed above in the context of Piccoli's unfair competition claim.

▌ Defendants are correct, however, in asserting that Piccoli's Paris Convention claim is duplicative of its Lanham Act claim and thus must be dismissed. In *Vanity Fair*, the Second Circuit held that the Paris Convention, as implemented by Section 44 of the Lanham Act, provides no additional substantive rights beyond those otherwise provided to domestic parties.[102] Courts in other jurisdictions have disagreed, contending that the Paris Convention creates a federal law of unfair competition applicable to international trademark disputes.[103] This Court, of course, is bound by *Vanity Fair*.

### Liability of Defendants World Apparel and Azteca for Unfair Competition

The continuing vitality of Piccoli's unfair competition and Lanham Act claims raises an issue with respect to defendants World Apparel and Azteca, who have moved to dismiss Piccoli's claims not only on grounds common to all defendants but also on grounds specific to themselves.[104] Each contends that Piccoli has failed to allege facts sufficient to state unfair competition and Lanham Act claims against them.

▌ Piccoli contends that it has alleged facts sufficient to establish Azteca's direct liability for unfair competition by alleging that Azteca manufactured and shipped Calvin Klein jeans to Scandinavia[105] and that an address label containing Jeanswear's address was obscured in one such shipment,[106] a fact presumably indicative of consciousness of guilt. Piccoli does not allege, however, that Azteca was responsible for obscuring the label giving Jeanswear's address. Rather, the complaint states merely that Azteca was the contractor on that shipment.[107] Piccoli's remaining allegations establish nothing more than that Azteca manufactured and shipped Calvin Klein jeans to Denmark. There is no

---

101. *See Berni*, 838 F.2d at 645–48.

102. *See* 234 F.2d at 640–44; *see also Majorica S.A. v. Majorca International, Ltd.*, 687 F.Supp. 92 (S.D.N.Y.1988).

103. *See, e.g., General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 684, 687–90 (E.D.Mich.1996) (collecting cases).

104. In the context of claims other than the still-viable unfair competition and Lanham Act claims, it was unnecessary to consider grounds other than those applicable to all defendants, as those grounds proved dispositive.

105. Cpt. ¶¶ 10 (Azteca manufactured Calvin Klein jeans), 43j (Azteca shipped jeans to Denmark), 44 (letter referred to Azteca as manufacturer). Piccoli's other allegations naming Azteca are either mere conclusory assertions of the existence of a conspiracy, *id.* ¶¶ 33, 109, or refer to actions taken by Jeanswear, *id.* ¶ 29.

106. Cpt. ¶ 45 (jeans shipped to Denmark in boxes labeled with Azteca's address and an address for "USCJ" in New Jersey; under the "USCJ" label was another address label listing "USCJ's" address as Jeanswear's).

107. *Id.*

allegation that Azteca's right to engage in this conduct was limited by any agreement or law, let alone that Azteca was aware of any such limitation. Piccoli's allegations clearly are insufficient to establish Azteca's direct liability for unfair competition. For the same reason, Piccoli's allegations concerning Azteca's direct liability for violating the Lanham Act also fails.

Piccoli appears to concede that World Apparel cannot be held directly liable for violating the Lanham Act or for unfair competition and rests instead upon a theory of co-conspirator liability that seeks to link World Apparel to the viable unfair competition and Lanham Act claims against Jeanswear.[108] Piccoli asserts that the other co-defendants, including Azteca, are likewise liable as co-conspirators regardless of whether they are directly liable as well. It therefore is necessary to examine the sufficiency of Piccoli's allegations of conspiracy.

 Because Piccoli's substantive claim of unfair competition claim is asserted under New York law, the Court looks to New York law to determine whether World Apparel and Azteca may be liable as co-conspirators on that claim. The elements of a civil conspiracy under New York law are " '(1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage.' " [109] Significantly, in determining whether Piccoli has adequately alleged these elements, the Court applies the fair notice standard of FED. R.CIV.P. 8(a) rather than the stricter require-

ments of FED.R.CIV.P. 9(b).[110] Here, Piccoli has alleged the existence of a conspiracy among the defendants, including Azteca and World Apparel, to facilitate Jeanswear's allegedly improper exports.[111] No more is required.

 Piccoli's Lanham Act claim, of course, is a matter of federal law, and thus it is federal law that will determine the adequacy of Piccoli's conspiracy allegations with regard to that claim. In the words of a leading commentator on trademark law, "[t]he use of the word 'conspiracy' is merely another way of describing a concert of action and intent which will extend tort liability beyond the active wrongdoer to those who merely planned, assisted or encouraged his acts. Such 'conspirators' are, in civil law, called 'joint tortfeasors.' " [112] Thus,

> "[a]ll those who, in pursuance of a common plan to commit an act which is tortious, actively take part in it, or further it by cooperation or request, or lend aid or encouragement, or ratify and adopt the acts done, are as equally liable as the person who performs the tortious act itself." [113]

Mere knowledge of the primary actor's wrongful conduct is insufficient to establish that a defendant is a joint tortfeasor.[114] "[T]here must be a finding that the defendant and the direct infringer 'have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control

---

**108.** Pl.Br. (World Apparel) at 15–23.

**109.** *Kashi v. Gratsos,* 790 F.2d 1050, 1055 (2d Cir.1986) (quoting *Suarez v. Underwood,* 103 Misc.2d 445, 447, 426 N.Y.S.2d 208, 210 (1980), *judgment aff'd,* 84 A.D.2d 787, 449 N.Y.S.2d 438 (2d Dept.1981)).

**110.** *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990) (citing *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989)). *Hecht* went on to assert nonetheless that "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Id.* As noted in *Spira v. Nick,* 876 F.Supp. 553, 560 n. 4 (S.D.N.Y.1995), however, this proposition is inconsistent with the subsequent decision of the United States Supreme

Court in *Leatherman v. Tarrant Co. Narcotics Intell. and Coord. Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In *Leatherman,* the Court reaffirmed that Rule 8(a) means exactly what it says—that the complaint need only give fair notice of the nature of the claim and the grounds upon which it rests—and that greater specificity is required only in the specific circumstances in which Rule 9(b) is applicable. *Id.* 507 U.S. at 167–68, 113 S.Ct. 1160.

**111.** *See, e.g.,* Cpt. ¶¶ 34, 109.

**112.** 3 MCCARTHY ON TRADEMARKS § 25:23.

**113.** *Id.*

**114.** *Id.*

over the infringing product.' " [115] Piccoli's allegations that all of the defendants, including World Apparel and Azteca, knowingly conspired with Jeanswear to effect the export of falsely designated Calvin Klein jeans to Scandinavia sufficiently assert both the requisite knowledge and control to satisfy this standard.

### Conclusion

Jeanswear's motion to dismiss the complaint is granted in all respects except that it is denied as to Piccoli's Lanham Act and common law unfair competition claims. World Apparel's motion for judgment on the pleadings and Azteca's motion to dismiss are granted in all respects except that they are denied with respect to Piccoli's conspiracy allegations.

SO ORDERED.

---

**115.** *Id.* (quoting *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir.1992) (citing *David Berg & Co. v. Gatto International Trading Co.*, 884 F.2d 306, 311 (7th Cir.1989))).