[756 NYS2d 26]

Kenneth Heller, Respondent, v Louis Provenzano, Inc., et al., Appellants.

First Department, February 25, 2003

## APPEARANCES OF COUNSEL

*Kenneth Heller*, respondent pro se (*Brian Isaac* on the brief; *Keith DeVries*, attorney), for respondent.

*Barbara DeCrow Goldberg* of counsel (*Timothy R. Capowski*, *Kenneth Mauro* and *Matthew W. Naparty* on the brief; *Mauro Goldberg & Lilling, LLP* and *Marshall Conway & Wright*, attorneys), for appellants.

## OPINION OF THE COURT

SULLIVAN, J.

This is an appeal in an action for personal injuries from the grant of a motion to amend the complaint, made more than six years after the commencement of the action, to assert a claim for punitive damages.

On January 3, 1990, the then 60-year-old plaintiff, an attorney, tripped and fell as he exited a freight elevator in a parking garage at 34 Leonard Street in Manhattan, sustaining, as a result, multiple fractures of the bones in his left arm, which required four operations. Plaintiff thereafter commenced this action against defendants, the garage owners, alleging negligence in the maintenance, operation and repair of the elevator door. After a trial, the jury returned a verdict in favor of plaintiff in the sum of $2.25 million, which the Trial Justice conditionally reduced to $1.25 million while imposing a $10,000 sanction against plaintiff. On appeal, this Court modified to direct a new trial on liability and damages "because of the serious misconduct—both before and during trial—of plaintiff and plaintiff's attorney," and otherwise affirmed, upholding the sanction (257 AD2d 378, 379).

Plaintiff thereafter moved to amend the complaint to assert a claim for punitive damages, arguing that a review of the trial transcript demonstrated that defendants and their employees and/or agents routinely permitted plaintiff and other customers to ride on the freight elevator in violation of the Building Code and other safety regulations. These actions, plaintiff argued, surpassed mere negligence and constituted gross negligence, warranting the imposition of punitive damages "to vindicate the important public interest in maintaining safety for parking garage customers."* Plaintiff asserted that the new damage claim would cause no prejudice since the issue of

---

* At the trial, defendants maintained that plaintiff insisted on riding on the freight elevator with defendants' employees in order to expedite the retrieval of his car.

defendants' violation of the safety regulations was "well developed" at the trial and therefore fully known by defendants.

Defendants opposed any amendment on the grounds of the six-year delay since the filing of the original complaint in seeking such relief and the fact that the case had already been tried to verdict and the verdict and judgment appealed. Moreover, they argued, the facts upon which the motion was based, i.e., the safety regulation violations, were known at the time of the filing of the complaint six years before. According to defendants, in seeking to add a claim for punitive damages, plaintiff was attempting to gain leverage and increase his bargaining position.

Defendants further maintained that they would be prejudiced by the amendment since, as a matter of law, punitive damages are not covered by a liability insurance policy in New York State and they would be obliged to retain additional counsel to defend the punitive damage claim and to conduct additional and expensive discovery. In any event, defendants argued, plaintiff's claims, at best, made out a claim for ordinary negligence and would not support a claim for punitive damages. Supreme Court granted the motion based on the ground that although the elevator in question was for commercial purposes, "private individuals were invited to ride on it." In addition, the court cited the existence of 14 violations. Since the ruling totally ignored the cogent arguments advanced by defendants in opposition to the motion and failed to consider the abject lack of merit of a claim for punitive damages in this routine negligence case, we reverse.

CPLR 3025 (b) provides that "[a] party may amend his pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances." Whether to grant the amendment is committed to the court's discretion (*Edenwald Contr. Co. v City of New York*, 60 NY2d 957). It is also a truism that "[m]ere lateness is not a barrier to the amendment. It must be lateness coupled with significant prejudice to the other side, the very elements of the laches doctrine" (*id.* at 959, quoting Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3025:5, at 477 [1974 ed]). We also recognize that, in the absence of prejudice, a motion to amend an ad damnum clause, whether made before or after trial, "should generally be granted" (*Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23).

Here, defendants are significantly prejudiced by the amendment. Contrary to plaintiff's argument in support of affirmance, while he does not seek to assert a new theory of liability, which, if that were the case, would be sufficient to warrant denial of the motion, given the six-year delay (*see Spence v Bear Stearns & Co.*, 264 AD2d 601; *Clayton Webster Corp. v Bozell & Jacobs*, 167 AD2d 145), no valid distinction can be drawn, either in law or in fact, between a new theory of liability and "an additional request for relief," particularly where, as here, such an amendment to the ad damnum would involve different elements and standards of proof and potentially subject defendants to a far greater and different dimension of liability than would otherwise have been the case.

Unlike a claim for negligence, to establish a claim for punitive damages, plaintiff must "demonstrate that the wrong to [him] rose to the level of 'such wanton dishonesty as to imply a criminal indifference to civil obligations'" (*Zimmerman v Tarshis*, 289 AD2d 230, 231, quoting *Walker v Sheldon*, 10 NY2d 401, 405). As a result of plaintiff's inexcusable and inordinate delay, defendants have been deprived of the opportunity to conduct discovery and establish a defense with respect to this belated damage claim. For example, assuming, arguendo, that a punitive damage claim would have been appropriate if timely asserted, defendants would have been entitled, at the very least, to conduct discovery or an investigation as to whether, at the time of the accident, a practice existed of allowing passengers to ride the freight elevators and, if such practice existed, as claimed, whether it was dangerous. In that regard, evidence of contemporaneous statistics involving garage elevator accidents would be relevant.

Furthermore, in light of the due process concerns implicated in the award of punitive damages as postulated by the United States Supreme Court in *BMW of N. Am., Inc. v Gore* (517 US 559), discovery and investigation into the types and scope of penalties and fines for comparable conduct and the ratio of such sanctions to the actual harm or loss suffered would be appropriate. It is fairly obvious that in allowing this belated amendment, Supreme Court failed to take these relevant considerations into account.

The facts of the case can be likened to those in *Licameli v Roberts* (277 AD2d 1057). In affirming the denial of a motion to amend the complaint to add a claim for punitive damages, the Court noted the plaintiff's failure "to provide an explanation for the lengthy delay in asserting the claim" and the "fact that

discovery is complete and a note of issue has been filed." (*Id.*) Here, discovery has been completed and a note of issue filed more than four years ago. Nor does plaintiff offer any explanation for the lengthy delay in moving for the relief sought.

Defendants are additionally prejudiced because, under the amendment, they are faced with an uninsured exposure different from the one confronting them in the first trial. While the ad damnum exceeded their policy limit at the first trial, the proof would have been no different even if the ad damnum had been within the policy limit since the type of damages sought was the same, whatever the amount of the ad damnum. And, for that reason, a partially uninsured defendant could feel confident in the defense provided by insurance counsel without the expenditure entailed in retaining personal counsel for the uninsured exposure. That is not the case, however, with a punitive damage claim. As noted, there are additional elements of proof in the defense of such a claim, which insurance counsel would have no interest in exploring or pursuing, since such proof would have no effect on the insurer's coverage interests. For that reason, plaintiff's argument that defendants did not see fit to protect their uninsured interest in the first trial by retaining personal counsel is beside the point. Defendants are substantially prejudiced by this amendment since they have been deprived of the opportunity to retain personal counsel to defend against the punitive damage claim at a time when effective discovery could still have been conducted with respect to that claim.

Another factor warranting denial of the motion is the glaring absence from plaintiff's moving papers of any explanation for his inordinate six-year delay in asserting a punitive damage claim. "Where there has been an extended delay in moving to amend, the party seeking leave to amend must establish a reasonable excuse for the delay" (*Jablonski v County of Erie*, 286 AD2d 927, 928; *see Reape v City of New York*, 272 AD2d 533; *Schwab v Russell*, 231 AD2d 820). In *Jablonski*, which involved a more than two-year delay in moving to amend, attributed to "inadvertent oversight," the Fourth Department affirmed the denial of the motion made on the eve of trial, stating, "In such case, there is a heavy burden on plaintiff to show extraordinary circumstances to justify amendment by submitting affidavits which set forth the recent change of circumstances justifying the amendment and otherwise giving an adequate explanation for the delay" (286 AD2d at 928, quoting *Hemmerick v City of Rochester*, 63 AD2d 816, 816). As the record shows, this ap-

plication to amend was made without explanation as to the delay, over 10 years after the accident, over six years after the commencement of the action, long after the completion of discovery and filing of the note of issue, over four years after the first trial of this action and over 1½ years after the decision on the prior appeal.

A final ground for reversal is that plaintiff's belated punitive damage claim is plainly lacking in merit. There is no evidence of willful or wanton negligence or recklessness on defendants' part to support a claim for punitive damages. "While it is true that motions for leave to amend pleadings are to be liberally granted in the absence of prejudice or surprise [citation omitted], it is equally true that the court should examine the sufficiency of the merits of the proposed amendment when considering such motions * * *. Where, as here, the proposed amendments are totally devoid of merit and are legally insufficient, leave to amend should be denied [citations omitted]" (*Zabas v Kard*, 194 AD2d 784, 784). In *Zabas*, as here, leave to amend to assert a claim for punitive damages was granted. The Second Department reversed, finding, "The allegations contained in the plaintiffs' amended complaints amount to nothing more than mere negligence and do not rise to the level of moral culpability necessary to support a claim for punitive damages" (*id.*; *see Arnold v Siegel*, 296 AD2d 363; *Tatzel v Kaplan*, 292 AD2d 440, 441; *Lee v Health Force*, 268 AD2d 564). As in the cited cases, the record fails to demonstrate that defendants acted so recklessly or wantonly as to justify a claim for punitive damages.

Plaintiff argues that the "violation of numerous safety regulations, as supported by the prior trial record, provide[s] appropriate grounds for assertion of a claim for punitive damages." As plaintiff is forced to concede, however, only one of the violations, issued approximately 11 months before the accident, involved the elevator doors. In any event, mere evidence of "safety regulations" violation is insufficient to warrant the imposition of punitive damages. As this Court noted in *Lex Tenants Corp. v Gramercy N. Assoc.* (288 AD2d 48), the plaintiff must "come forward with evidence of misconduct by the [defendant] that would meet the 'very high threshold of moral culpability' [citation omitted] required for an award of punitive damages" (*id.* at 49, quoting *Giblin v Murphy*, 73 NY2d 769, 772).

Significantly, there is no allegation here of any similar prior incidents involving the elevator door as evidence that defend-

ants consciously appreciated the risk created by the alleged defect and yet permitted plaintiff to ride in the elevator. Moreover, the violation of a safety regulation, as opposed to a statute, is, at most, only "some evidence of negligence" and does not constitute negligence per se (*Bauer v Female Academy of Sacred Heart*, 97 NY2d 445, 453). If the violation of a regulation does not constitute negligence per se, it surely is insufficient to sustain a claim for punitive damages, which requires a significantly higher level of culpability. The bankruptcy of plaintiff's position is best illustrated by his reliance on his expert's trial testimony that poor maintenance accounted for the failure of the elevator door to open completely. While "poor maintenance" may support a claim of negligence, it is insufficient, as a matter of law, to warrant the imposition of punitive damages (*see National Broadcasting Co. v Fire Craft Servs.*, 287 AD2d 408, 409).

We have considered plaintiff's other arguments and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Robert Lippmann, J.), entered on or about December 21, 2000, granting plaintiff's motion to amend the complaint to assert a claim for punitive damages, should be reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and the motion denied.

NARDELLI, J.P., SAXE and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 21, 2000, reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and plaintiff's motion to amend the complaint to assert a claim for punitive damages denied.