■ OIL HEAT INSTITUTE OF LONG ISLAND INSURANCE TRUST, Plaintiff, v RMTS ASSOCIATES, LLC, et al., Defendants. (Action No. 1.) OIL HEAT INSTITUTE OF LONG ISLAND, INC., et al., Respondents, v ISLAND GROUP ADMINISTRATION, INC., et al., Defendants and Third-Party Plaintiffs. J.N. SAVASTA CORP. et al., Third-Party Defendants-Appellants, et al., Third-Party Defendants. (Action No. 2.) [772 NYS2d 313]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered June 4, 2002, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motion for leave to serve an

amended complaint in the consolidated action to assert direct claims against third-party defendants J.N. Savasta Corp., Joseph N. Savasta, and Thomas Magan, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, and the motion denied.

In 1998, the Oil Heat Institute of Long Island, Inc. (Oil Heat), a trade association, created a "self-insurance" fund, plaintiff Oil Heat Institute of Long Island Insurance Trust (Oil Heat Trust), to provide medical insurance to its employees. Defendant Island Group Administration, Inc. (IGA) was named fund administrator after submitting a proposal to manage the fund with defendant Gerber Life Insurance Company (Gerber).

Gerber issued to Oil Heat, through a broker, defendant RMTS Associates (RMTS), an aggregate stop-loss policy running from July 1, 1998 to June 30, 1999. Under the terms of this policy, the fund would pay claims during the policy year, and, after the term expired, the fund would be reimbursed for the amount of benefits paid above a stipulated base (the attachment point), to be determined at the end of the policy term. However, the fund lacked the necessary cash reserves and ran out of money to pay claims before the end of the policy year.

On June 30, 1999, the day the policy term expired, Oil Heat Trust commenced an action against Gerber, RMTS and IGA, alleging that (1) Gerber and RMTS were in breach of contract for refusing to make payments under the policy; (2) IGA had acted as its agent; and (3) to induce plaintiff to enter into the Gerber policy, IGA had misrepresented both (a) the dollar amount of the attachment point and (b) that Gerber would pay up front all claims in excess of the attachment point. Three months later, Oil Heat Trust and Oil Heat commenced a second action against the same defendants, alleging the same wrongs under additional theories.

One month later, in October 1999, IGA and its principals commenced a third-party action against, inter alia, J.N. Savasta Corp. and two of its officers, Joseph N. Savasta and Thomas Magan (the Savasta defendants). The third-party complaint alleged that the Savasta defendants had been retained by plaintiffs as "consultant" and "agent" to help establish a health benefits fund, and that they had made the initial overture to IGA to solicit a cost estimate for the plan. As relevant to this appeal, the third-party complaint further alleged that (1) the third-party plaintiff IGA had been advised by plaintiffs' representative that the Savasta defendants had full authority to act on plaintiffs' behalf regarding the formulation and acceptance of the health benefits plan; (2) the Savasta defendants had

actively participated in revising the health benefits plan; and (3) the Savasta defendants had deliberately misrepresented to IGA that two million dollars in cash reserves was available if member premiums were insufficient to reimburse claims.

The two actions were consolidated and the complaint in the first action was dismissed as to both RMTS and Gerber. It is unclear whether the complaint in the second action was dismissed as to RMTS, and Gerber has a pending motion for summary judgment dismissing the complaint as against it in the second action.

After RMTS and Gerber were dismissed from at least part of the lawsuit, by order to show cause dated April 18, 2002, plaintiffs sought leave to serve an amended complaint in the consolidated action to assert direct claims against the Savasta defendants. The proposed pleading alleges that the Savasta defendants had been the broker and agent for plaintiffs and had been negligent and had breached their fiduciary duties, in failing to, inter alia, (1) advise plaintiffs that the self-funded insurance plan was unsuitable because it lacked cash reserves; (2) recommend a higher premium due to the lack of cash reserves; (3) send plaintiffs a copy of the executed policies; and (4) ensure that the terms of the actual policy matched those in the proposals. In addition, the proposed pleading asserts that the Savasta defendants had been Oil Heat's broker on prior health insurance plans and that they were its agent or broker prior to the date IGA was hired, i.e., during the proposal stage of the self-insurance plan, despite the absence of any formal agency agreement.

In seeking leave, plaintiffs claimed that their delay in asserting these new claims against the Savasta defendants was because their role as broker and agent had only come to light during recent discovery proceedings.

In opposition, the Savasta defendants argued that plaintiffs had to have known of the Savasta defendants' role from the outset, but had made a tactical decision not to sue them directly. Thus, the Savasta defendants argued that plaintiffs did not present a reasonable excuse for their failure to timely assert these direct claims.

In addition, they claimed they would be prejudiced if added as direct defendants at this late date because of their cooperation with plaintiffs' counsel with whom they had engaged in confidential discussions after being advised by counsel that "your and the Other Parties['] best interest is in a forceful and appropriate joint prosecution and defense effort."

The Savasta defendants also argued that the newly asserted

claims were belied by plaintiffs' own admissions. Specifically, as recently as one month before plaintiffs' brought the instant motion to serve an amended complaint, Oil Heat's president stated at his deposition that "Mr. Savasta was simply a consultant in this transaction . . . ." In addition, plaintiffs, through their counsel, admitted, in a letter to the Savasta defendants' insurance carrier seeking the carrier's approval to represent them as third-party defendants, that "OHI retained the consulting services of Savasta Corp. [and] Savasta Corp. had no agency or broker relationship vis-à-vis any of the parties to this litigation."

Finally, the Savasta defendants argued that the newly asserted claims were time-barred, an argument apparently abandoned on appeal, and that the "extraordinary circumstances" necessary to a fiduciary breach claim were lacking.

Without discussing delay or prejudice, but finding that the matters on which plaintiffs' attorneys had represented the Savasta defendants were not "substantially similar to the matters at issue herein," the motion court granted plaintiffs' motion to serve an amended complaint.

We reverse. A motion for leave to amend a pleading is committed to the sound discretion of the trial court (see *Edenwald Contr. Co. v City of New York,* 60 NY2d 957 [1983]). Generally, leave to amend a pleading is, in the absence of prejudice or surprise to the opposing party, freely granted (see CPLR 3025 [b]; *Inwood Tower v Fireman's Fund Ins. Co.,* 290 AD2d 252, 252-253 [2002]). However, " '[w]here there has been an extended delay in moving to amend, the party seeking leave to amend must establish a reasonable excuse for the delay' " (*Heller v Louis Provenzano, Inc.,* 303 AD2d 20, 24 [2003], quoting *Jablonski v County of Erie,* 286 AD2d 927, 928 [2001]). Plaintiffs have failed to proffer a reasonable excuse for their delay in seeking the instant relief. Moreover, their present assertions are belied by the record.

Specifically, plaintiffs claim that they were not aware of the extent of the involvement of the Savasta defendants regarding the development of this plan until after depositions were held. However, it defies logic that Oil Heat would not have fully grasped the nature of its relationship with the Savasta firm since their relationship began almost 10 years before this transaction.

In any event, even accepting this claim, the third-party complaint, served 2½ years prior to the instant motion, alleged that the Savasta defendants had full authority to act on behalf of plaintiffs with regard to the formulation and acceptance of

the health benefit plan and that Savasta and Magan had deliberately misrepresented to IGA that the fund had adequate cash reserves. Moreover, in the proposed amended complaint itself, plaintiffs alleged that on or about May 11, 1999, almost three years before the instant motion, Oil Heat Trust had learned, inter alia, the Savasta defendants had breached their duty of care due to Gerber's insistence "on pre-funding and pre-filing of participant's claims before it would pay such claims" and "the divergence between the actual policies of insurance executed [on Oil Heat Trust's behalf] and the proposals." Thus, at the very least, plaintiffs were on notice well before any depositions took place that possible claims existed against the Savasta defendants.

Since plaintiffs have failed to offer a reasonable excuse for their delay, the court should not have granted them leave to serve an amended complaint (see Heller, 303 AD2d 20 [2003], supra [glaring absence from moving papers of any explanation for inordinate delay]; Inwood, 290 AD2d 252 [2002], supra [in view of utter failure to offer reasonable excuse for long delay in seeking amendment, denial of motion constituted proper exercise in discretion]; Birdsall v City of New York, 60 AD2d 522 [1977] [leave to amend properly denied where factual basis of proposed pleading was known at the outset, two years before the motion was made]).

It is clear that plaintiffs made a deliberate tactical decision at the commencement of this litigation not to sue the Savasta defendants. Thus, plaintiffs, "having charted their own course, cannot now be heard to complain" (Matter of Greenwald v Codd, 54 AD2d 626, 627 [1976], lv denied 41 NY2d 803 [1977]).

In addition to plaintiffs' failure to proffer a reasonable excuse, the Savasta defendants have demonstrated prejudice. To establish prejudice "there must be some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position" (Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23 [1981]; Valdes v Marbrose Realty, 289 AD2d 28, 29 [2001]).

Plaintiffs, through their counsel, enlisted the aid of these defendants and requested that they present a "forceful and appropriate joint prosecution and defense effort." Thus, the Savasta defendants had no reason, through the years of this litigation, to ever challenge the position now taken by plaintiffs. Instead, they were invited to and did share information with plaintiffs and plaintiffs' attorney. Had these third-party defendants been aware that they were likely to become defendants in the main consolidated action, they most surely

would not have exchanged information and would have undoubtedly secured their own attorney.

Under these particular circumstances, where plaintiffs have failed to offer a reasonable excuse for their delay in suing the Savasta defendants and where defendants have demonstrated that they will be prejudiced if plaintiffs are granted leave to serve the amended pleading, we find that the motion court improvidently exercised its discretion in granting plaintiffs motion for leave to serve an amended complaint. Concur—Nardelli, J.P., Mazzarelli, Andrias, Ellerin and Marlow, JJ.