OPINION OF THE COURT
Shirley Werner Kornreich, J.
Motion sequence numbers 006 through 012 are consolidated for disposition.
All of the parties filed motions for summary judgment pursuant to CPLR 3212. Plaintiff, the IDW Group, LLC, moves for summary judgment on its claims against defendants and for dismissal of all counterclaims (seq. No. 006). Defendant Liberty Surplus Insurance Corporation moves for dismissal of IDW’s claims against it and for summary judgment on its counterclaim (seq. No. 007). Defendant Levine Insurance Risk Management Services opposes Liberty’s motion and also moves for dismissal of IDW’s claims against it (seq. No. 008). Defendants AAS Insurance Brokerage of New York, doing business as American Agency System, and American Agency Systems Companies (collectively, American) move for summary judgment on IDW’s claims and for dismissal of the other defendants’ cross claims (seq. No. 009).
IDW also moves by order to show cause: (1) for leave to supplement the record on the parties’ summary judgment mo *372 tions; and (2) to stay judgment on Liberty’s counterclaim until after trial (seq. No. 010). Liberty opposes this motion. Additionally, IDW filed an unopposed motion for an order, pursuant to 22 NYCRR 216, to permit certain documents to be filed, nunc pro tunc, under seal (seq. No. Oil). Finally, IDW moves by order to show cause for leave to serve a proposed second amended complaint (SAC) (seq. No. 012).
IDW’s motion for summary judgment is granted in part and denied in part; Liberty’s motion for summary judgment is granted; Levine’s motion for summary judgment is granted in part and denied in part; American’s motion for summary judgment is granted; IDW’s motion for leave to supplement the record and to stay judgment is denied; IDW’s unopposed motion to seal is granted; and IDW’s motion to amend is granted for the reasons that follow.
I. Procedural History and Factual Background
The following facts are undisputed.
IDW is a recruitment and search firm that places high-level financial services employees with financial institutions. Levine is an insurance broker. IDW used Levine’s services to obtain errors and omissions (E&O) insurance policies from Liberty. Each year, IDW would write a check to Levine for an amount that included the annual premium payment plus Levine’s brokerage fee. Upon receipt, Levine would deposit the check into its bank account. Levine would then write another check for the premium amount and mail it to American, a wholesale insurance agent/broker that served as a program administrator for Liberty. American would then remit the premium payment to Liberty. When Liberty received the premium payment, it would authorize American to issue a policy to IDW, which American would send to Levine.
The policies that IDW purchased from Liberty were annual occurrence policies that would commence on April 18 of each year and cover all specified liabilities that were incurred during the term of the policy. American issued E&O policies to IDW on Liberty’s behalf for the 2005/2006, 2006/2007, 2008/2009, and 2009/2010 policy periods. The issues in this case arose when IDW’s 2006/2007 policy expired on April 18, 2007.
On or about April 11, 2007, IDW received an application for a 2007/2008 policy from Levine, which it filled out and sent back to Levine. On April 30, 2007, 12 days after the 2006/2007 policy had expired, Levine sent the application to American to obtain *373 a quote for a 2007/2008 policy. That same day, American sought approval from Liberty to issue the policy because American was not allowed to backdate policies. Later that day, Liberty authorized American to quote Levine a premium of $7,500. If the quote was accepted, American was authorized to issue a 2007/ 2008 policy upon receipt of the premium payment. American forwarded this information to Levine. On or about May 4, 2007, IDW received an invoice from Levine in the amount of $7,885, of which $385 was for Levine’s fees and applicable taxes. On May 9, 2007, IDW sent Levine a check for $7,885. On May 15, 2007, Levine deposited the check into its account. On May 17, 2007, Stephanie Petrillo, Levine’s bookkeeper, mailed a check in the amount of $7,285[1] to an address in Neptune, New Jersey, which she thought was the location of American’s office.
Unbeknownst to Petrillo, at some prior point in time, American closed its Neptune office. Thus, American never received Levine’s check. Additionally, the post office did not return the check to Levine. In fact, to date, no one knows what happened to the check. However, Levine’s bank records indicate that the check was never deposited. Importantly, American never issued IDW a 2007/2008 policy because it never received Levine’s check.
The following year, between April 28, 2008 and June 19, 2008, Levine and American exchanged emails that confirm that both Levine and American knew that American never received Levine’s check and that a 2007/2008 policy was never issued. These emails were sent in connection with the issuance of IDW’s 2008/ 2009 policy, which along with the 2005/2006, 2006/2007, and 2009/2010 policies were properly issued.
Earlier, before the 2006/2007 policy had lapsed, on February 12, 2007, IDW and nonparty J.P. Morgan Chase Bank, N.A. entered into a retained search services agency agreement, whereby IDW agreed to recruit candidates to work at JPMorgan. The JPMorgan agreement prohibited IDW from soliciting, inducing, or recruiting JPMorgan employees who worked in certain areas of the bank from leaving the company. It provided that if IDW breached the non-solicitation clause, IDW would have to pay JPMorgan the greater of two sums: (1) the fee *374 received by the agency that places the former JPMorgan employees; or (2) the fee that IDW would have received had those employees been placed with JPMorgan. On August 6, 2007, August 9, 2007, and June 18, 2008, IDW and JPMorgan entered into three contracts, virtually identical to the JPMorgan agreement, to provide further recruitment services to JPMorgan.
On August 13, 2008, JPMorgan notified IDW that it believed that IDW breached the non-solicitation clause by improperly inducing JPMorgan employees to leave the bank to work for a competitor (Citadel). On October 23, 2008, JPMorgan commenced an action against IDW in the United States District Court for the Southern District of New York, styled JPMorgan Chase Bank, NA. v The IDW Group, LLC (No. 08-CV-9116) (the JPMorgan action), in which it alleged that IDW improperly solicited six individuals to leave JPMorgan to work for Citadel. IDW’s defenses were that the former JPMorgan employees did not fall into the groups of employees governed by the non-solicitation clause and that IDW never solicited them.
At the time the JPMorgan action was commenced, Liberty was not aware that IDW was never issued a 2007/2008 policy. Consequently, in accordance with its obligations to provide its insured with defense counsel, Liberty appointed attorneys to represent IDW and paid a portion of their fees. In a letter from Liberty to IDW dated November 6, 2008, Liberty reserved its right to deny coverage and recoup defense costs in the event that JPMorgan’s claims against IDW were not covered by IDW’s policy. On July 9, 2009, Liberty received an amended interrogatory response from JPMorgan, indicating that JPMorgan was increasing the amount of damages it was seeking from $1 million to over $55 million. On July 14, 2007, Liberty sent a letter to IDW indicating that it was disclaiming coverage for the JP-Morgan action because IDW did not have a policy in place in January 2008 (when the JPMorgan employees were allegedly solicited by IDW) because Liberty never received IDW’s premium check. On July 30, 2009, IDW and JPMorgan settled the JPMorgan action for a confidential settlement amount (disclosed to the court). Though Liberty disclaimed coverage earlier that month, it agreed to review the settlement papers and found that the settlement was reasonable.
IDW commenced this action on December 29, 2009. On February 11, 2010, IDW filed an amended complaint (the AC), asserting 12 causes of action: (1) breach of contract against Levine; (2) negligence against Levine; (3 & 4) breach of fiduciary *375 duty against Levine; (5) fraud, constructive fraud, and negligent misrepresentation against Levine; (6) breach of express and/or implied agreement against American; (7) negligence against American; (8) breach of fiduciary duty against American; (9) breach of contract against Liberty; (10) negligence against Liberty; (11) violations of the insurance laws of Massachusetts, New Hampshire, New Jersey, and New York against Liberty; and (12) a declaratory judgment against Liberty.
In March 2010, Levine and American each served an answer in which they asserted cross claims for contribution and indemnification against their respective codefendants. On August 9, 2010, Liberty served an amended answer in which it asserted cross claims for indemnification against Levine and American and a counterclaim against IDW for the legal expenses it paid in the JPMorgan action.
IDW sets forth two theories of liability against defendants. First, IDW contends that Levine and American are liable for their negligence in the check snafu that led to IDW incurring liability in the JPMorgan action without an E&O policy in place. Second, IDW avers that Liberty is liable for the JPMorgan settlement amount because a policy was actually in place for 2007/2008 either by virtue of American’s actions, Liberty’s failure to properly disclaim coverage, or applicable state insurance law. These two theories are incompatible because IDW either did or did not have coverage in place for the 2007/2008 period. Levine has no liability if coverage was in place and Liberty has no liability if coverage was not in place. For the reasons discussed infra, in part II, it is clear that no coverage was in place. Moreover, the scope of Levine’s liability is limited to whatever Liberty would have had to pay IDW under a 2007/2008 policy if one had been issued. Ergo, its liability turns on whether a 2007/2008 policy would have covered the settlement with JP-Morgan.
The E&O policies that Liberty issued to IDW all had substantially the same terms and the parties have stipulated that if a 2007/2008 policy had been issued to IDW, its terms would also have been the same. The policy sets forth that Liberty shall pay for IDW’s “Damages and Claims Expenses as a result of a Wrongful Act by [IDW] ... for which [IDW] is legally liable.” Such amounts include settlement sums and attorneys’ fees. However, the policy excludes coverage for liabilities (1) “arising from any actual dishonest, criminal, malicious or fraudulent act or omission by [IDW]”; (2) “interference with actual or prospec *376 tive business relationships, contracts or contractual relationships, or unfair competitions”; and (3) a “return, withdrawal or reduction of professional fees.” Accordingly, the issue turns on whether IDW’s conduct in the JPMorgan transaction and/or the settlement amount falls within one of these exclusions.
All of the individuals involved in the JPMorgan settlement negotiations were deposed. They all purport not to remember any details that shed any light on what the settlement amount represented or how the amount was reached.
II. Summary Judgment Motions (Seq. Nos. 006-009)
It is well established that summary judgment may be granted only when it is clear that no triable issue of fact exists. (Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986].) The burden is upon the moving party to make a prima facie showing of entitlement to summary judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979].) A failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993].) If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact. (Alvarez, 68 NY2d at 324; Zuckerman, 49 NY2d at 562.) The papers submitted in support of and in opposition to a summary judgment motion are examined in the light most favorable to the party opposing the motion. (Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997].) Mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (Zuckerman, 49 NY2d at 562.) Upon the completion of the court’s examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].)
A. Claims against Levine
“An insurance agent or broker may be held liable under theories of breach of contract or negligence for failing to procure insurance. An insured must show that the agent or broker failed to discharge the duties imposed by the agreement to obtain insurance, either by proof that it breached the agreement or because it failed to exercise due care in the *377 transaction. Liability is ‘limited to that which would have been borne by the insurer had the policy been in force.’ ” (Jual Constr. Ltd. v A.C. Edwards, Inc., 74 AD3d 1150, 1150-1151 [2d Dept 2010] [citations omitted], quoting Structural Bldg. Prods. Corp. v Business Ins. Agency, 281 AD2d 617, 620 [2d Dept 2001].)
IDW is granted partial summary judgment against Levine due to Levine’s failure to procure an E&O policy from Liberty for the 2007/2008 period. Such failure is clearly a breach of contract. Moreover, Levine’s actions with regard to the premium check were clearly negligent. Levine’s initial negligence in sending the check to the wrong address was further compounded by its negligence in failing to alert IDW that a 2007/2008 policy was never issued. A reasonable broker would have taken one of myriad steps to ensure that coverage was in effect, including confirming receipt of the check with American, reviewing its bank records to see that the check was never deposited, and taking corrective measures in April 2008, approximately six months before the JPMorgan action was commenced, when IDW had serious concerns (which it articulated to American) that a 2007/2008 policy was never issued. Instead, Levine did nothing. As a result, there is no question of fact that Levine’s actions were negligent and warrant partial summary judgment, placing Levine in Liberty’s shoes with respect to liability for the JPMorgan settlement and IDW’s attorneys’ fees.[2]
That being said, there are questions of fact that preclude summary judgment on whether the policy covers the JPMorgan settlement. The allegations in the JPMorgan action involve both claims for which coverage would be excluded under the policy (e.g. tortious interference) and claims for which coverage would be included under the policy (e.g. breach of contract). Moreover, there is a question as to whether the settlement amount was a return, withdrawal or reduction of professional fees, a policy coverage exclusion. None of the evidence in the record conclusively proves that the settlement amount was for an excluded category of claims or that it was merely the return of IDW’s fees. These questions of fact, where the credibility of the witnesses is at issue, must be resolved at trial. If the finder of fact determines that the JPMorgan settlement falls under an exclusion to the policy, Levine will incur no liability to IDW.
*378 As for the remaining causes of action against Levine, the breach of fiduciary duty claim is dismissed both as improperly duplicative of the breach of contract claim and because purchasing an insurance policy from a broker does not give rise to a fiduciary relationship. (See Murphy v Kuhn, 90 NY2d 266, 270 [1997].) Likewise, IDW cannot maintain a claim for negligent misrepresentation or constructive fraud because the existence of a fiduciary relationship is a predicate to such claims. (J.A.O. Acquisition Corp. v Stavitsky, 8 NY3d 144, 148 [2007]; Levin v Kitsis, 82 AD3d 1051, 1054 [2d Dept 2011].) Finally, IDW cannot maintain a fraud claim because Levine did not make any affirmative representations to IDW regarding the issuance of a 2007/2008 policy, and even if it had, such claim would be improperly duplicative of the breach of contract claim. (See Hawthorne Group v RRE Ventures, 7 AD3d 320, 323 [1st Dept 2004].)
B. Claims against American
First, IDW cannot maintain a breach of fiduciary duty claim against American. As discussed supra, in part II.A, there is no fiduciary relationship between an insured and its broker. Moreover, IDW had no relationship of any kind with American nor did they have any direct contact.
Second, IDW cannot maintain a breach of contract claim against American. It is undisputed that the parties never entered into either a written or oral contract. The implied contract claims fail because a contract cannot be “implied in fact” where, as here, American made no promises to IDW. (See Heller v Kurz, 228 AD2d 263, 263-264 [1st Dept 1996], citing Kapral’s Tire Serv. v Aztek Tread Corp., 124 AD2d 1011 [4th Dept 1986].) There also was no contract “implied in law” because American was not unjustly enriched. (See id.) Indeed, neither American nor Liberty received any money on the nonexistent 2007/2008 policy.
Finally, IDW cannot maintain a negligence claim against American. Based on American’s communications with Levine, American was on notice about the check situation and the fact that a 2007/2008 policy was never issued. However, American had no duty to inform Levine of this fact or to remedy the situation. Instead, as the wholesale agent, American was merely standing in the shoes of Liberty and had no duties to IDW other than to issue a policy upon receipt of the premium payment. Levine is solely at fault for the policy not being issued. American *379 neither contributed to nor participated in Levine’s negligence. All claims and cross claims asserted against American are dismissed with prejudice.
C. Claims against Liberty
No fact is clearer than the fact that Liberty did not issue an E&O policy to IDW for the 2007/2008 period. Therefore, IDW and Liberty were not parties to a contract that governs the underlying events, and IDW cannot maintain a breach of contract claim against Liberty. Likewise, Liberty owed no duty of care to IDW for the underlying events. Levine’s duty was to make sure a policy was issued, and American’s duty was to issue a policy if it received a premium payment. Assuming arguendo that American was Liberty’s agent, Liberty still has no liability because, as discussed supra, in part II.B, American has no liability to IDW Therefore, the negligence claim is dismissed.
Next, Liberty did not breach the Insurance Law.[3] The statute at issue, Insurance Law § 3426 (e) (1) (A), provides: “A covered policy shall remain in full force and effect . . . unless written notice is . . . delivered ... to such insured’s authorized agent or broker, indicating the insurer’s intention . . . not to renew such policy.” It is undisputed that Liberty did not send IDW or Levine such statutory notice. However, Liberty argues that the policy is exempt from this notice requirement under section 3426 (l) (2) because the policy was “written on an excess line basis.”
Section 3426 (a) (6) defines an “excess liability policy” as “a policy of commercial risk, public entity or professional liability insurance, including a commercial umbrella policy, when written over one or more underlying liability policies that provide with respect to the same risk coverage of at least five hundred thousand dollars in the aggregate.” Liberty cites to an opinion of the New York State Department of Insurance (DOI), dated July 21, 2008, that states that “[i]n New York, ‘surplus lines’ is synonymous with ‘excess lines’ ” and that DOI uses the term “excess lines” in lieu of “surplus lines” merely to refer to the statutory language. (Ops Gen Counsel NY Ins Dept No. 08- *380 07-14 at n 1 [July 2008].) Liberty does not cite any contrary authority.[4]
Neither this court nor the appellate courts have weighed in on this issue. However, in Atlantic Cas. Ins. Co. v Coffey (2012 WL 777297, *3, 2012 US Dist LEXIS 30960, *7-11 [WD NY, Mar. 8, 2012, No. 11 CV 170S]), the Federal District Court rejected the argument that Liberty makes in this case, but did so because it was made “without relevant argument or authority.” Here, in contrast, Liberty cites to persuasive (albeit nonbinding) authority indicating that even though New York’s insurance statutes use the term “excess,” common industry practice is to use the term “surplus” when referring to the type of insurance defined in section 3426 (a) (6).
There is no dispute that the policy was written on a surplus line basis. Additionally, the policy meets the definition set forth in section 3426 (a) (6). Thus, the court finds that the policy is exempt from the notice requirements of section 3426 (e) (1) (A) and no coverage was created for the 2007/2008 period due to Liberty’s failure to issue a notice of non-renewal.
Finally, the cause of action against Liberty for a declaratory judgment is dismissed because no policy was in effect in 2007/ 2008. For all of the above reasons, summary judgment is granted to Liberty and all of IDW’s claims against it are dismissed.
D. Liberty’s Counterclaim
As discussed, supra, in part II.C, Liberty has no coverage obligations to IDW for the JPMorgan settlement. Consequently, Liberty is granted summary judgment on its counterclaim for reimbursement of the $209,157.02 in legal fees that it expended defending IDW in the JPMorgan action. (See Chicago Ins. Co. v Borsody, 165 F Supp 2d 592, 601 [SD NY 2001].)
Both Liberty’s reservation of rights and disclaimer of liability were timely, and IDW was not unduly prejudiced by either. Moreover, IDW’s estoppel and waiver arguments fail because there was never any coverage in place for 2007/2008. (See Albert J. Schiff Assoc. v Flack, 51 NY2d 692, 698 [1980].) It should be noted that Liberty’s review of the JPMorgan settlement agreement has no bearing on this issue since Liberty had a substantial interest in making sure that it did not unreasonably disapprove of the settlement in case it was ultimately found liable for cover *381 age for 2007/2008. (See Transcare N.Y., Inc. v Finkelstein, Levine & Gittlesohn & Partners, 23 AD3d 250 [1st Dept 2005].)
III. Motion to Supplement the Record and Stay Judgment (Seq. No. 010)
IDW’s motion to supplement the record is denied. At oral arguments on the motions for summary judgment, held on January 29, 2013, the court expressed concern that Liberty’s citation to the relevant section of the Insurance Law was incorrect and instructed Liberty to submit the proper citation to the court. Later that day, Liberty submitted a letter indicating that it cited to the correct statute, but that at oral argument, the confusion was caused by its erroneous reference to subsection (l) (the letter) as subsection (1) (the number). The parties then submitted numerous supplemental submissions related to the section 3426 issues (discussed supra, in part II.C) and myriad unrelated matters, none of which was authorized by the court and all of which were improper under the CPLR and the rules of this part. Therefore, IDW’s motion to supplement the record is denied, and all post-argument submissions relating to the summary judgment motions have not been considered by this court and are not part of the record on such motions.
Next, IDW’s motion to stay enforcement of Liberty’s judgment against it is denied. Pursuant to CPLR 3212 (e) (2), this court will exercise its discretion to stay the execution of judgment when the parties have outstanding claims against each other that will be resolved at trial. (Bartfield v RMTS Assoc., 283 AD2d 240, 241 [1st Dept 2001].) Here, however, there are no outstanding claims between IDW and Liberty. The only issue left for trial is whether Levine is liable to IDW for the JPMorgan settlement amount plus IDW’s legal fees from the JPMorgan action. The outcome of the trial has no bearing on Liberty’s entitlement to collect $209,157.02 from IDW. The fact that such amount corresponds to a category of damages that IDW might recover from Levine is not a sufficient basis for a stay.
IV Motion to Seal (Seq. No. 011)
“[T]here is a broad presumption that the public is entitled to access to judicial proceedings and court records.” (Mosallem v Berenson, 76 AD3d 345, 348 [1st Dept 2010].) However, the public right to access is not absolute. (Danco Labs. v Chemical Works of Gedeon Richter, 274 AD2d 1, 7 [1st Dept 2000].) Pursuant to 22 NYCRR 216.1, the party seeking to seal court records must establish “good cause.” (Mancheski v Gabelli Group Capital Partners, 39 AD3d 499, 502 [2d Dept 2007].) “Since *382 confidentiality is the exception,” the movant must establish that “public access to the documents at issue will likely result in harm to a compelling interest of the movant and that no alternative to sealing can adequately protect the threatened interest.” (Id. [citations omitted].) This court has discretion, on a case by case basis, to determine if good cause exists. (Id.)
IDW moves for leave to permit two categories of information in the parties’ motions for summary judgment to remain filed under seal. Defendants do not oppose the motion. The first category of information relates to the JPMorgan settlement, including the settlement amount. IDW has established good cause for this information to remain under seal. The JPMorgan settlement agreement contained a confidentiality provision, and the terms of the settlement are not material to this motion. (Velazquez v St. Barnabas Hosp., 57 AD3d 251 [1st Dept 2008].) Nonetheless, if this case proceeds to trial, the settlement amount will not remain confidential (see supra at part II.A) since it directly impacts whether Levine is liable to IDW
The second category of information sought to be sealed relates to confidential agreements between Liberty and American that govern American’s role as program administrator of certain Liberty insurance policies. There is good cause to seal these documents. Their terms are confidential, are not material to this motion, and will not be needed at trial.
V Motion to Amend (Seq. No. 012)
Pursuant to CPLR 3025 (b), leave to amend a pleading should be freely given unless it would result in prejudice or surprise or the amendment is palpably improper or insufficient. (McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp., 59 NY2d 755, 757 [1983].) This court has discretion to determine, on a case by case basis, whether to grant leave. (Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983].) The plaintiff “need not establish the merit of its proposed new allegations, but simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit.” (MBIA Ins. Corp. v Greystone & Co., Inc., 74 AD3d 499, 500 [1st Dept 2010] [citations omitted].) Nevertheless, leave to amend should be denied if the plaintiff waited an unreasonable time to bring its motion, such that the amendment would cause “significant prejudice” to the defendant. (Heller v Louis Provenzano, Inc., 303 AD2d 20, 22 [1st Dept 2003].)
IDW’s proposed amendment is limited to explicitly asserting a claim against Levine for the attorneys’ fees paid by Liberty in *383 the JPMorgan action. As discussed supra, in part II.D, IDW must reimburse Liberty for such attorneys’ fees. Moreover, as discussed supra, in part II.A, the scope of Levine’s potential liability includes both IDW’s damages (the JPMorgan settlement amount) and IDW’s defense costs. This should have been obvious to the parties, and the AC’s allegations sufficiently encompass a claim against Levine for IDW’s attorneys’ fees. That being said, to remove any ambiguity, the court grants IDW leave to file a SAC including this claim and will deem it served on all parties upon its filing on the New York State courts electronic filing (NYSCEF) system. The filing of the SAC does not unduly prejudice any of the parties, and no further discovery is needed because the parties already know the amount of IDW’s attorneys’ fees. Accordingly, it is ordered that the motion for summary judgment by plaintiff, the IDW Group, LLC, against defendant Levine Insurance Risk Management Services is granted in part as follows: said defendant committed a breach of contract and negligence for the above-mentioned reasons and will be liable to said plaintiff (1) for the JPMorgan settlement amount; and (2) said plaintiffs legal fees in the JPMorgan action, if said plaintiff can prove at trial that such amounts would have been covered by an E&O policy from Liberty for the 2007/ 2008 period, and the motion is otherwise denied; and it is further ordered that the motion for summary judgment by defendant Liberty Surplus Insurance Corporation against plaintiff, the IDW Group, LLC, is granted, the action against Liberty Surplus Insurance Corporation is dismissed and the Clerk is directed to enter judgment in favor of said defendant and against said plaintiff in the sum of $209,157.02, and said judgment is hereby severed from the judgment that will be issued after trial; and it is further ordered that the motion for summary judgment by defendant Levine Insurance Risk Management Services against plaintiff, the IDW Group, LLC, is granted in part as follows: the third (breach of fiduciary duty), fourth (breach of fiduciary duty), and fifth (fraud, constructive fraud, and negligent misrepresentation) causes of action in the amended complaint are dismissed against said defendant, and the motion is otherwise denied; and it is further ordered that the motion for summary judgment by defendants AAS Insurance Brokerage of New York, doing business as American Agency System and American Agency Systems Companies, against plaintiff, the IDW Group, LLC, and defendants Levine Insurance Risk Management Services and Liberty Surplus Insurance Corporation is granted, *384 and the Clerk is directed to (1) dismiss the amended complaint against said moving defendants with prejudice; and (2) dismiss the cross claims of said codefendants with prejudice; and it is further ordered that the motions by plaintiff, the IDW Group, LLC, for leave to supplement the record on the parties’ summary judgment motions and to stay the aforementioned judgment of Liberty Surplus Insurance Corporation are denied; and it is further ordered that the motion by plaintiff, the IDW Group, LLC, to permit certain document to be filed, nunc pro tunc, under seal is granted; and it is further ordered that the motion by plaintiff, the IDW Group, LLC, to amend its complaint is granted and said plaintiff is directed to file its proposed second amended complaint on the NYSCEF system within seven days of the entry of this order.

. It is not clear why the check was written for an amount that was $215 less than the quoted premium of $7,500. Indeed, even if the check was mailed to the correct address, this apparent error might have also caused a 2007/2008 policy not to be issued. Nonetheless, the court will not speculate about why this was done or the hypothetical implications.

. See infra at part V.

. New York law applies, not the insurance laws of Massachusetts, New Hampshire, or New Jersey, because the 2006/2007 policy is expressly governed by New York law and was issued in New York.

. As discussed infra, in part III, the court disregards the parties’ post-argument submissions.