Vertiv, Inc. v Naithani (2023 NY Slip Op 50548(U))

[*1]

Vertiv, Inc. v Naithani

2023 NY Slip Op 50548(U)

Decided on June 6, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 6, 2023
Supreme Court, New York County

Vertiv, Inc., Plaintiff,

against
Mahesh Naithani, PHARMASPECTRA US LLC (formerly known as MEDMEME LLC), PHARMASPECTRA LLC, MEDICAL INTELLIGENCE SOLUTIONS LLC, and MEDMEME LLC, Defendants.

Index No. 652689/2022

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 43, 44, 45, 46, 47, 49, 50, 51, 52 were read on this motion for LEAVE TO FILE.
Defendants Mahesh Naithani, Pharmaspectra LLC, Medical Intelligence Solutions LLC, and Medmeme LLC (Medmeme) (collectively, defendants) move, pursuant to CPLR 3025 (b), for leave to amend their answer to assert counterclaims. The motion is granted in part.
 BACKGROUND
According to defendants, Medmeme is a company that helps pharmaceutical companies quantify and analyze medical science (NY St Cts Elec Filing [NYSCEF] Doc No. 47, proposed first amended verified answer with counterclaims ¶ 18). Medmeme sought to bring to the market a system codenamed the "Safety Project" that would find, import, synthesize, and analyze publicly-available pharmaceutical data relating to Food and Drug Administration-approved medications (id., ¶ 19). Medmeme hired plaintiff Vertiv, Inc. (plaintiff) in order to build and launch the product (id., ¶ 20). Plaintiff and Medmeme entered into a contract dated February 12, 2018 (id., ¶ 22). The contract stated that the services to be provided by plaintiff "would be more fully described in one or more Statements of Work issued hereunder ('SOW')" (id.). Defendants allege that the contract required plaintiff to:
"provide the Services (a) in accordance with the terms and subject to the conditions set forth in the respective SOW and this Agreement; (b) using personnel of required skill, experience, and qualifications; (c) in a timely, workmanlike, and professional manner; and (d) in accordance with the highest professional/generally recognized industry standards in Supplier's [plaintiff's] field"
(id., ¶ 26 [emphasis omitted]). Under the contract, plaintiff was required to "[a]ssign only qualified, legally authorized Supplier Representatives to provide the Services" (id., ¶ 27). The contract also provides that plaintiff "shall be responsible for all costs associated with out-of-pocket expenses including, but not limited to, meals . . . and all other personal expenses" (id., ¶ 28). 

Defendants allege that plaintiff began work on the Safety Project on or about January 15, 2018 (id., ¶ 30). According to defendants, shortly thereafter, it became apparent that plaintiff lacked the necessary expertise, equipment, and physical space to perform the work (id., ¶ 31). Defendants allege that plaintiff did not have sufficient office space to house the approximately 17 individuals assigned to work on the Safety Project (id., ¶ 32). Defendants further assert that Medmeme was forced to provide food to plaintiff's staff during the project, a cost that had been allocated to plaintiff under the contract (id., ¶ 33). Plaintiff also did not have office equipment or computers, requiring Medmeme to incur the cost of furnishing these items (id., ¶ 34). Defendants allege that the individuals plaintiff assigned to the Safety Project were underqualified and lacked necessary experience (id., ¶ 35). When Medmeme informed plaintiff that particular individuals were undertrained and underqualified, plaintiff did not remove these individuals from the Safety Project (id., ¶ 36).
Defendants further allege that the parties entered into a further SOW that changed the payment terms from a "time and materials" basis to a "fixed-price basis" (id., ¶ 40). Defendants claim that Medmeme paid plaintiff $380,116 for products and intellectual property that was never delivered, and that it was forced to expend over $125,000 in expenses relating to office space, utilities and food (id., ¶¶ 48, 49). 
Defendants now move for leave to amend their answer to assert counterclaims for breach of contract and conversion. They contend that plaintiff will not be prejudiced or surprised by the amendment. Further, defendants contend that the counterclaims are meritorious.
In opposition, plaintiff contends that defendants' motion should be denied because the proposed counterclaims are palpably insufficient and defendants have failed to demonstrate the merit of these claims. Plaintiff maintains that the proposed counterclaim for breach of contract: (1) fails to identify the provision of the contract that was allegedly breached; (2) fails to properly plead defendants' performance; and (3) fails to plead actual damages. Plaintiff also contends that the counterclaim for conversion is barred by the statute of limitations. Additionally, plaintiff asserts that defendants "are unilaterally estopped from arguing that they now object or have objected to the invoices, as they have already made partial payment to [plaintiff] to the tune of several hundred thousand dollars" (NYSCEF Doc No. 49 at 6).
In reply, defendants concede that their proposed counterclaim for conversion is time-barred and removed it from their proposed amended answer (NYSCEF Doc No. 51). However, defendants contend that their proposed counterclaim sufficiently alleges the existence of a valid contract; defendants' performance; that plaintiff breached the contract; and the allegations sufficiently support their claim for damages of $500,000. Defendants further assert that the doctrines of res judicata and collateral estoppel are inapplicable.

DISCUSSION
It is well settled that "[l]eave to amend the pleadings shall be freely given absent prejudice or surprise resulting directly from the delay" (Tri-Tec Design, Inc. v Zatek Corp., 123 AD3d 420, 420 [1st Dept 2014] [internal quotation marks and citation omitted]; see also CPLR 3025 [b] ["Leave shall be freely given upon such terms as may be just . . ."]). "On a motion for [*2]leave to amend, [the movant] need not establish the merit of its proposed new allegations, but must simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit" (MBIA Ins. Corp. v Greystone & Co., Inc., 74 AD3d 499, 500 [1st Dept 2010] [citations omitted]; see also Lavrenyuk v Life Care Servs., Inc., 198 AD3d 569, 570 [1st Dept 2021], lv dismissed 38 NY3d 1021 [2022]). "Mere delay is insufficient to defeat a motion for leave to amend" (Kocourek v Booz Allen Hamilton Inc., 85 AD3d 502, 504 [1st Dept 2011]). "Prejudice requires some indication that the defendant has been hindered in the preparation of [its] case or has been prevented from taking some measure in support of [its] position" (id.). Nevertheless, "[w]here there has been an extended delay in moving to amend, the party seeking leave to amend must establish a reasonable excuse for the delay" (Oil Heat Inst. of Long Is. Ins. Trust v RMTS Assoc., 4 AD3d 290, 293 [1st Dept 2004] [internal quotation marks and citation omitted]). 
A. Breach of Contract
Here, defendants have demonstrated that the proposed counterclaim for breach of contract is neither palpably insufficient nor clearly devoid of merit (see Agbo v Constantin Assoc., LLP, 204 AD3d 599, 599 [1st Dept 2022] [breach of contract claim was not "palpably insufficient" or "clearly devoid of merit" where the plaintiff sufficiently alleged a breach of partnership agreement by failing to pay her interest after her withdrawal from partnership] [internal quotation marks and citation omitted]). Defendants allege that Medmeme entered into a contract with plaintiff to build and launch its product (NYSCEF Doc No. 47 ¶ 22). The contract required plaintiff to use only full-time "personnel of required skill, experience, and qualifications" and to complete the project "in a timely, workmanlike, and professional manner," "in accordance with the highest professional/generally recognized industry standards in [plaintiff's] field" (id., ¶ 26). Defendants assert that Medmeme fully performed its obligations under the contract, and that plaintiff breached its obligations by assigning inexperienced employees and non-qualified third-party contractors to Medmeme's project, and by shifting the costs of providing office space, utilities, equipment, and food for plaintiff's workers to Medmeme (id., ¶¶ 54-57). At this stage, defendants have sufficiently alleged that plaintiff's breaches have caused Medmeme to sustain over $500,000 in damages (id., ¶¶ 48, 49, 59). Contrary to plaintiff's contention, defendants are not required to demonstrate the merit of their proposed breach of contract claim (see MBIA Ins. Corp., 74 AD3d at 500). To the extent that plaintiff raises a vague estoppel argument, this does not defeat amendment at this time.
Moreover, plaintiff does not argue that it is somehow prejudiced by the proposed counterclaim for breach of contract. As pointed out by defendants, discovery has not yet commenced in this action. 
B. Conversion
Defendants concede, in reply, that their counterclaim for conversion is time-barred (NYSCEF Doc No. 50 at 2, 7). Therefore, the branch of their motion seeking to add a counterclaim for conversion is denied.

CONCLUSION
Accordingly, it is
ORDERED that the motion of defendants Maheshi Naithani, Pharmaspectra LLC, Medical Intelligence Solutions LLC, and Medmeme LLC (sequence number 003), for leave to amend their answer is granted to the extent of allowing said defendants to assert a counterclaim for breach of contract in the form annexed to the moving parties' reply papers (NYSCEF Doc [*3]No. 51), and the amended answer shall be deemed served upon service of a copy of this order with notice of entry thereof; and the motion is otherwise denied; and it is further
ORDERED that plaintiff shall serve an answer to the amended pleading or otherwise respond thereto within 20 days from the date of said service.
DATE 06/06/2023
ROBERT R. REED, J.S.C.